JOHN C. KIRKE, #175055
jkirke@donahue.com
CHANCELLOR W. TSENG, #322236
CTseng@donahue.com
DONAHUE FITZGERALD LLP
Attorneys at Law
1999 Harrison Street, 26th Floor
Oakland, California 94612-3520
Telephone: (510) 451-3300
Facsimile: (510) 451-1527

Attorneys for Plaintiff,
BYTE BRIDGE, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| BYTE BRIDGE, INC., a Nevada corporation,<br><br>Plaintiff,<br><br>v.<br><br>CURTIS H. BREVILLE, an individual; C.H. BREVILLE ENTERPRISES LLC, a Colorado limited liability company, dba IPE SOLUTIONS; and DOES 1-10, inclusive<br><br>Defendant. | Case No.<br><br>**COMPLAINT FOR:**<br><br>**1. TRADE SECRET MISAPPROPRIATION (DTSA)**<br><br>**2. TRADE SECRET MISAPPROPRIATION (CUTSA)**<br><br>**3. FALSE DESIGNATION OF ORIGIN (LANHAM ACT)**<br><br>**4. BREACH OF FIDUCIARY DUTY AND DUTY OF LOYALTY**<br><br>**5. UNFAIR COMPETITION LAW**<br><br>**6. BREACH OF CONTRACT**<br><br>**7. INTENTIONAL INTERFERENCE WITH CONTRACT AND PROSPECTIVE ECONOMIC RELATIONS**<br><br>**8. NEGLIGENT INTERFERENCE WITH CONTRACT AND PROSPECTIVE ECONOMIC RELATIONS**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Byte Bridge, Inc. ("Plaintiff" or "Byte Bridge"), a Nevada corporation, brings this action against Defendants Curtis H. Breville ("Defendant Breville" or "Mr. Breville") and C.H. Breville Enterprises LLC dba IPE Solutions ("IPE"), a Colorado limited liability company, and Does 1–10 (collectively "Defendants") for trade secret misappropriation and Lanham Act violations.

## NATURE OF THE ACTION

1. This is a trade secret misappropriation action against a technology company's former Vice President. With Defendant Breville's help as its employee in 2025, Byte Bridge created a Foundational Liquid Cooling Certification (FLCC) program and related training materials. Byte Bridge created and marketed the FLCC course as an industry offering to attract business from potential clients and partners. Byte Bridge developed and treated its FLCC program as a non-public trade secret. As Byte Bridge's employee, Mr. Breville assigned to Byte Bridge and relinquished all rights to the FLCC program, including its name and confidential materials.

2. After leaving Byte Bridge, Mr. Breville started a new company, IPE Solutions. IPE is now offering the identical FLCC program as its own. Mr. Breville's company is also targeting Byte Bridge's clients and partners. In 2026, Mr. Breville filed two infringing trademark applications for Plaintiff's FLCC program. He listed a 2025 first use in commerce date during his Byte Bridge employment and around the same time that Plaintiff officially launched its FLCC program. Mr. Breville's continued use and possession of Plaintiff's FLCC trade secret is misappropriation. His offering of the FLCC program as his own is also a Lanham Act violation. Byte Bridge seeks damages, including injunctive relief and exemplary damages.

## PARTIES

3. Plaintiff Byte Bridge, Inc. is a Nevada corporation with its principal place of business in Hayward, Alameda County, California. Plaintiff is a global IT solutions provider founded in Silicon Valley, and Defendant's former employer in 2025.

4. On information and belief, Defendant Curtis H. Breville is an individual residing in Adams County, Colorado. Defendant is Plaintiff's former employee and Vice President.

/ / /

/ / /

5. On information and belief, Defendant C.H. Breville Enterprises LLC dba IPE Solutions is a limited liability company formed in Colorado. On information and belief, IPE is an alter-ego of Defendant Breville, who owns and controls IPE.

6. On information and belief, the involvement of additional persons or entities are currently unknown to Plaintiff and are included herein as Defendants DOES 1–10. After investigation and discovery, Plaintiff will amend this Complaint and name them as defendants.

## JURISDICTION AND VENUE

### I. Subject Matter Jurisdiction

7. This Court has 28 U.S.C. § 1331 federal question jurisdiction. The gravamen of Plaintiff's Complaint and claims arise under the Defend Trade Secrets Act at 18 U.S.C. § 1836.

8. This Court also has subject matter jurisdiction under 28 U.S.C. § 1332. Plaintiff is a Nevada corporation in good standing with its principal place of business in California. Under well-established federal law and the "nerve center test", Plaintiff is deemed a Nevada and California citizen for diversity jurisdiction purposes. 28 U.S.C. § 1332(c)(1); *see also Harris v. Rand*, 682 F.3d 846, 851 (9th Cir. 2012) (adopting *Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010)). On information and belief, Defendants are both Colorado citizens for diversity purposes. As discussed further below, Plaintiff seeks damages in excess of $75,000.00.

9. This Court also has 28 U.S.C. § 1367 supplemental jurisdiction over any claims not falling under original jurisdiction. All alleged claims arise from Defendant's theft of trade secrets and intellectual property infringement. These claims form the "same case or controversy", "derive from a common nucleus of operative fact," and are expected to be tried together. *Kuba v. 1-A Agr. Ass'n*, 387 F.3d 850 (9th Cir. 2004). This District Court continues to find original and supplemental jurisdiction for many recent federal trade secret theft cases with related state law claims. *See*, *e.g.*, *7EDU Impact Academy Inc. v. You*, 760 F.Supp.3d 981 (N.D. Cal. 2024); *Beluca Ventures LLC v. Einride Aktiebolag*, 660 F.Supp.3d 898 (N.D. Cal. 2023); *Albert's Organics, Inc. v. Holzman*, 445 F.Supp.3d 463 (N.D. Cal. 2020).

/ / /

/ / /

**II. Personal Jurisdiction**

10. This Court has specific personal jurisdiction over Defendant under the purposeful availment and purposeful direction theories. "A court may exercise specific personal jurisdiction over a nonresident defendant if (1) the nonresident defendant purposefully directs his activities at the forum or performs some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the plaintiff's claim arises out of the forum-related activities of the nonresident defendant; and (3) the exercise of jurisdiction over the nonresident defendant is reasonable." *Mulato v. Wells Fargo Bank, N.A.*, 76 F.Supp.3d 929, 944 (citing *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)).

11. While Defendant is currently a Colorado resident, his employment with Plaintiff effectively occurred within this District in California. Throughout his employment from February 3 to December 17, 2025, Defendant purposefully directed his employment activities towards California for the mutual benefit of Plaintiff and himself. Specifically and on multiple occasions, Defendant personally visited Plaintiff's California offices for client meetings and management conferences. Defendant worked directly with many of Plaintiff's California-based employees. Therefore, over the course of his 10-month employment, Defendant purposefully availed and directed himself to this District sufficient for this Court to establish specific personal jurisdiction.

**III. Venue**

12. Venue is proper in this District because Plaintiff resides in Alameda County, California. The alleged business relationship and development of misappropriated trade secrets between the Parties all occurred at Plaintiff's principal place of business in Hayward, California.

## <u>FACTUAL ALLEGATIONS</u>

13. Plaintiff is a global IT solutions provider with entities and service locations across six continents. Plaintiff possesses deep expertise in data centers and workplace solutions. Plaintiff helps organizations worldwide bridge technological gaps and scaling issues.

14. Defendant Breville is an individual and Colorado resident. From February 3 to December 17, 2025, Plaintiff employed Mr. Breville initially as its Global Pre-Sales Engineering

Manager – Systems and Cooling, then eventually as its Vice President of Data Center Cooling Programs and GTM.

15. At the start of Mr. Breville's employment, he reviewed and signed a standard "Employment and Confidentiality Agreement" dated February 3, 2025 (**Exhibit A**, "**Employment Agreement**"). Pursuant to the Employment Agreement, Mr. Breville specifically acknowledged that any "information with commercial value in the business in which Byte Bridge is engaged" is Plaintiff's "Proprietary Information." Emp. Ag. § 2.1. The Proprietary Information definition, which was given by way of illustration only, specifically included "trade secrets, ideas, processes…know-how…designs, innovations, techniques, business development strategies…" and "customer and supplier lists." Emp. Ag. § 2.2. Mr. Breville acknowledged that Plaintiff was and is the sole owner of all Proprietary Information, including its trade secrets and related intellectual property rights. Emp. Ag. § 2.3. Mr. Breville agreed to "keep all Proprietary Information confidential and not to disclose, reproduce, or use such information without prior written consent from Byte Bridge." Emp. Ag. § 2.4. Further, Mr. Breville assigned and transferred to Plaintiff any and all of his right, title, and interest acquired in the Proprietary Information and related intellectual property rights during his employment with Byte Bridge. Emp. Ag. § 2.5.

16. Within the same Employment Agreement, Mr. Breville agreed to give Plaintiff prompt written notice of his acquisition or creation of any Proprietary Information, and to execute documents to perfect Byte Bridge's ownership of such information. Emp. Ag. § 2.6. Mr. Breville also agreed to return all Proprietary Information he created or possessed to Byte Bridge upon employment termination. Emp. Ag. § 2.7.

17. Finally, Mr. Breville was given the opportunity to disclose and claim any prior inventions belonging to him before his employment with Plaintiff. Emp. Ag. § 4. Mr. Breville did not disclose any such inventions. Therefore, Mr. Breville does not have any claim of ownership over any Proprietary Information he developed during his employment with Plaintiff.

18. At the end of Mr. Breville's employment, he reviewed and signed a "Severance Agreement" dated December 17, 2025 (**Exhibit B,** "**Severance Agreement**"). Pursuant to the Severance Agreement, Mr. Breville agreed to not solicit any Byte Bridge client, customer, or

employee for a period of twelve (12) months. Sev. Ag. § 4. Mr. Breville also agreed to keep confidential all of Byte Bridge's trade secrets and Proprietary Information, which included "non-public business strategies, financial information, pricing, customer data, and internal operations." Sev. Ag. § 5. Collectively, Plaintiff's statutorily-defined trade secrets under the Defend Trade Secrets Act; California Uniform Trade Secrets Act; and Proprietary Information is referred herein as Plaintiff's "Trade Secrets."

19. In the course and scope of his employment as Plaintiff's former Vice President, Mr. Breville participated in management of the corporation. Mr. Breville would also exercise some discretionary authority on behalf of the company.

20. In the course and scope of his employment as Plaintiff's former Vice President, Mr. Breville also handled and helped develop Plaintiff's Trade Secrets. Such Trade Secrets often related to Plaintiff's industry technology. Specifically, Mr. Breville helped develop Plaintiff's Foundational Liquid Cooling Certification Program and its related materials ("FLCC"). Plaintiff developed the FLCC program as part of its commercial offerings for the benefit of Plaintiff's clients and potential customers. Mr. Breville did not disclose the FLCC as a prior invention in his Employment Agreement. Plaintiff treats its FLCC program as part of its Trade Secrets.

21. In 2025, Plaintiff made further investments into its FLCC program. Plaintiff commenced intellectual property protections and launched a dedicated FLCC program webpage on May 15, 2025.[1] Indeed, Mr. Breville's profile, including his own name, biography, and photo, was listed on Plaintiff's FLCC program webpage on September 14, 2025.[2] Mr. Breville used Plaintiff's name and the FLCC brand to promote Plaintiff and its FLCC program to the wider industry,

---

[1] BYTEBRIDGE FLCC™ (FOUNDATIONAL LIQUID COOLING CERTIFICATION), https://www.bytebt.com/foundational-liquid-cooling-certification/ (last visited July 23, 2026); *see also* WAYBACK MACHINE, https://web.archive.org/web/20250524101830/https://www.bytebt.com/foundational-liquid-cooling-certification/ (last visited July 23, 2026).

[2] WAYBACK MACHINE, https://web.archive.org/web/20250914152135/https://www.bytebt.com/foundational-liquid-cooling-certification/ (last visited July 23, 2026).

including potential customers. With Mr. Breville's knowledge, Plaintiff also began exploring potential trademarking options for its FLCC program in 2025. In fact, on May 6, 2025, Mr. Breville internally suggested to Byte Bridge's management that they "trademark[] FLCC so that nobody else can copy it and put out their own[.]"

22. After his employment ended, Mr. Breville launched his own company, Defendant IPE Solutions. In 2026, Mr. Breville, through IPE, began offering identical FLCC programs. As of July 23, 2026, IPE's website references "FLCC by IPE Solutions" and "Foundational Liquid Cooling Certification" programs.[3]

23. Shortly after leaving Byte Bridge, Defendants began targeting Plaintiff's customers and/or partners by offering them IPE's version of the FLCC program. On information and belief, Defendants targeted Plaintiff's customers by using Plaintiff's Proprietary Information he obtained from Plaintiff. Since launching IPE, Defendants have begun offering its version of the FLCC program to consumers, which consumers have actually taken. Plaintiff alleges that the damages it will suffer as to loss of business and goodwill will quickly and eventually exceed $75,000.00 if Defendants are not enjoined from profiting off of Plaintiff's Trade Secrets.

24. On January 30, 2026, Mr. Breville filed a trademark application for "Foundational Liquid Cooling Certification" with the United States Patent and Trademark Office ("USPTO").[4] This application is currently still pending before the USPTO with Serial #99626029. Mr. Breville is the listed owner and filed this application on an intent-to-use basis.

25. On February 1, 2026, Mr. Breville filed a trademark application for "Liquid Cooling Certification" with the USPTO.[5] This application is currently still pending before the USPTO with

---

[3] IPE SOLUTIONS, https://ipe-solutions.com/flcc/ (last visited July 23, 2026).

[4] Trademark Status & Document Retrieval ("TSDR"), Serial #99626029, USPTO, https://tsdr.uspto.gov/#caseNumber=99626029&caseSearchType=US_APPLICATION&caseType=DEFAULT&searchType=statusSearch (last visited July 23, 2026).

[5] TSDR, Serial #99627391, USPTO, https://tsdr.uspto.gov/#caseNumber=99627391&caseSearchType=US_APPLICATION&caseType=DEFAULT&searchType=statusSearch (last visited July 23, 2026).

Serial #99627391. Mr. Breville is the listed owner and filed this application on an in-use basis, with April 27, 2025 listed as the date of first use in commerce.

26. On February 13, 2026, Mr. Breville filed a trademark application for "FLCC" with the USPTO.[6] This application is currently still pending before the USPTO with Serial #99652700. Mr. Breville is the listed owner and filed this application on an in-use basis, with April 28, 2025 listed as the date of first use in commerce.

27. Therefore, by Mr. Breville's own sworn filings with the USPTO, Mr. Breville's claimed first use in commerce of the "Liquid Cooling Certification" and "FLCC" trademark began while he was Plaintiff's employee. Mr. Breville's claimed first use in commerce was a mere two weeks before he suggested to Plaintiff's management that Byte Bridge should trademark FLCC "so that nobody else can copy it and put out their own."

**FIRST CAUSE OF ACTION**

**(Defend Trade Secrets Act — 18 U.S.C. § 1836)**

**(Against all Defendants)**

28. Plaintiff realleges and reincorporates paragraphs 12–22 above.

29. Plaintiff owns the FLCC program, including its name and related program materials. The FLCC program is part of Plaintiff's Trade Secrets, as defined by 18 U.S.C. § 1836, *et seq*., because Plaintiff derives independent economic value from this information which is not generally known nor readily ascertainable through proper means by another person who can obtain economic value from the disclosure or use of the information, and Plaintiff has taken reasonable measures to keep such information secret. At all relevant times herein, Plaintiff's Trade Secrets was and is not generally known to Plaintiff's competitors in the industry or to the general public. Plaintiff developed and acquired its Trade Secrets and related pricing information, sales and business strategies, which all pertain to products used in or intended for use in interstate or foreign commerce.

/ / /

[6] TSDR, Serial #99652700, USPTO, https://tsdr.uspto.gov/#caseNumber=99652700&caseSearchType=US_APPLICATION&caseType=DEFAULT&searchType=statusSearch (last visited August 15, 2026).

30. Defendants misappropriated Plaintiff's Trade Secrets. At the very least, Defendants retained unauthorized copies of Plaintiff's Trade Secrets, which are confidential and proprietary. Defendants disclosed or used Plaintiff's Trade Secrets without Plaintiff's express or implied consent. At the time of Defendants' disclosure or use of Plaintiff's Trade Secrets, Defendants knew or had reason to know that the knowledge of the Trade Secrets was acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit its use. Defendants also may have used improper means to acquire knowledge of Plaintiff's Trade Secrets. Plaintiff's Trade Secrets are related to a product or service used in or intended for use in interstate or foreign commerce. Defendants' misappropriation and related actions have proximately and actually damaged Plaintiff. Defendants' misappropriation and related actions continue to damage Plaintiff to date.

31. On information and belief, Defendants have disclosed and intend to continue to disclose Plaintiff's Trade Secrets in violation of the Defend Trade Secrets Act.

32. As a further proximate result of Defendants' wrongful conduct and threatened misappropriation, Plaintiff has been irreparably injured and is threatened with additional and ongoing injuries as a result of recurring daily lost business and disrupted client relationships that might never be made whole again as a result of Defendants misappropriating Plaintiff's Trade Secrets. Because Plaintiff's remedy at law is inadequate, Plaintiff seeks temporary, preliminary, and permanent injunctive relief. Plaintiff is threatened with permanently losing goodwill, its clients, competitive advantage, and trade secrets in amounts which may not be possible to determine, unless Defendants are enjoined and restrained by order of this Court.

33. Defendants have been and will continue to be unjustly enriched by the misappropriation of Plaintiff's Trade Secrets and confidential and proprietary information, and, unless restrained, will continue to threaten to use, actually use, divulge, acquire and/or otherwise misappropriate Plaintiff's Trade Secrets and confidential and proprietary information.

34. Plaintiff is therefore entitled to damages for actual loss, damages for any unjust enrichment and any other monetary remedy allowable caused by the misappropriation of any trade secrets that is not addressed in computing damages for actual loss, pursuant to 18 U.S.C. §

1836(b)(3)(B).

35. On information and belief, Defendants' misappropriation and threatened misappropriation of Plaintiff's Trade Secrets has been willful and malicious. Thus, Plaintiff's trade secrets have been willfully and maliciously misappropriated, and Plaintiff is entitled to an award of exemplary damages of two times the damages it would otherwise be entitled to, pursuant to 18 U.S.C. § 1836(b)(3)(C), and its attorneys' fees in conjunction with this action.

**SECOND CAUSE OF ACTION**

**(California Uniform Trade Secrets Act — Civil Code §§ 3426, *et seq.*)**

**(Against all Defendants)**

36. Plaintiff realleges and reincorporates paragraphs 12–22 above.

37. At all relevant times, Defendants were in possession of Plaintiff's Trade Secrets as defined above and by California Civil Code § 3426 *et seq*. Plaintiff's Trade Secrets constitute proprietary business information that are trade secrets because Plaintiff derives independent economic value from that information, such information is not generally known nor readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and because the information is the subject of reasonable efforts to maintain its secrecy, including as described above. Plaintiff's Trade Secrets are not, and were not, generally known to Plaintiff's competitors, the industry or the general public.

38. On information and belief, Defendants have actually misappropriated, and threatens to continue to misappropriate, Plaintiff's Trade Secrets without Plaintiff's consent, in violation of California Civil Code § 3426 *et seq*.

39. On information and belief, Defendants have, at the very least, retained unauthorized copies of Plaintiff's Trade Secrets, including but not limited to proprietary and confidential information regarding the FLCC program, Plaintiff's business relationships, pricing information and sales production pertaining to products used in, or intended for use in, interstate or foreign commerce. As a result, injunctive relief is appropriate.

40. On information and belief, Defendants have disclosed, and intends to continue to disclose, Plaintiff's Trade Secrets and confidential information in violation of the California

Uniform Trade Secrets Act.

41. As a proximate result of Defendants' misappropriation and threatened misappropriation of Plaintiff's Trade Secrets, Plaintiff has suffered, and will continue to suffer, damages in an amount to be proven at the time of trial.

42. As a further proximate result of Defendants' wrongful conduct and threatened misappropriation, Plaintiff has been irreparably injured and is threatened with additional and ongoing injuries as a result of recurring daily lost business and disrupted client relationships that might never be made whole again as a result of Defendants' misappropriating Plaintiff's Trade Secrets. Because Plaintiff's remedy at law is inadequate, Plaintiff seeks temporary, preliminary, and permanent injunctive relief. Plaintiff is threatened with permanently losing goodwill, customers and suppliers, its competitive advantage, and its trade secrets in amounts which may not be possible to determine, unless Defendants are enjoined and restrained by order of this Court.

43. On information and belief, Defendants have been and will continue to be unjustly enriched by the misappropriation of Plaintiff's Trade Secrets, and, unless restrained, will continue to threaten to use, actually use, divulge, threaten to disclose, acquire and/or otherwise misappropriate Plaintiff's Trade Secrets.

44. Plaintiff is therefore entitled to damages for actual loss, damages for any unjust enrichment caused by the misappropriation of any trade secrets that is not addressed in computing damages for actual loss, and any other remedy allowable pursuant to the California Uniform Trade Secrets Act.

45. Plaintiff is informed and believes and, based thereon alleges that Defendants' misappropriation and threatened misappropriation has been willful and malicious. Thus, Plaintiff's Trade Secrets have been willfully and maliciously misappropriated, and Plaintiff is entitled to an award of exemplary damages of two times the damages it would otherwise be entitled to and its attorneys' fees in conjunction with the action pursuant to the California Uniform Trade Secrets Act.

/ / /

/ / /

/ / /

**<u>THIRD CAUSE OF ACTION</u>**

**(Lanham Act — 15 U.S.C. § 1125(a)(1))**

**(Against all Defendants)**

46. Plaintiff realleges and reincorporates paragraphs 12–20, 22–24 above.

47. At all times relevant herein, Plaintiff owned and owns a valid and protectable trademark for its Foundational Liquid Cooling Certification (FLCC) program. Plaintiff's FLCC trademark rights began as early as May 15, 2025, when Plaintiff officially launched its FLCC program.

48. At all times relevant herein, Defendants' prior and continuing use of the identical Foundational Liquid Cooling Certification (FLCC) trademark on his company, IPE Solutions' website, is likely to cause consumer confusion, deception, or mistake.

49. Therefore, Defendants' prior and continuing usage of the Foundational Liquid Cooling Certification (FLCC) trademark violates Section 43(a) of the Lanham Act's prohibition against false designation of origin, false advertising, and unregistered trademark infringement, at 15 U.S.C. § 1125(a).

50. As a proximate result of Defendants' false designation of origin and trademark infringement, Plaintiff is entitled to damages in an amount according to proof at trial consisting of actual damages; disgorgement of profits; treble damages for willful misconduct; attorneys' fees and costs of suit; injunctive relief; corrective advertising; destruction of all infringing materials; and all other statutory and available relief.

**<u>FOURTH CAUSE OF ACTION</u>**

**(Breach of Fiduciary Duty and Duty of Loyalty)**

**(Against Defendant Breville)**

51. Plaintiff realleges and reincorporates paragraphs 12–20 above.

52. Everything Defendant Breville acquired by virtue of his employment with Plaintiff, except the compensation that was due to him from Plaintiff, belongs to Plaintiff, whether acquired lawfully or unlawfully, or during or after the expiration of the term of his employment under California Labor Code § 2860.

53. While employed by Plaintiff, Defendant Breville had the duty to give Plaintiff preference before transacting any business similar to Plaintiff's for Defendant Breville or his business under California Labor Code § 2863.

54. Through the course and scope of his employment as Byte Bridge's former Vice President, Defendant Breville participated in management of the corporation and exercised some discretionary authority. At some level, Defendant Breville was involved in company policy-making functions; actively involved in significant corporation transactions; and was able to influence corporate policies and governance. Therefore, during his employment at Byte Bridge, Defendant Breville owed Plaintiff a fiduciary duty and duty of loyalty under California Labor Code § 28.

55. On information and belief, Defendant Breville breached his fiduciary duty and duty of loyalty to Plaintiff when he transferred his loyalty from Byte Bridge to himself, IPE Solutions, and/or another third-party before the end of his employment; when he failed to develop Byte Bridge's business before the end of his employment; and/or when he usurped Byte Bridge's corporate opportunities for himself, IPE Solutions, and/or another third-party before the end of his employment. Plaintiff makes these allegations based on Defendant Breville's actions: by his infringing trademark application's first in use designation of two weeks before Byte Bridge launched its FLCC program; and by Defendant Breville's targeting of Plaintiff's customers and/or partners.

56. As a proximate result of Defendant Breville's breaches of his fiduciary duty and duty of loyalty, Plaintiff has been damaged and is entitled to damages in an amount according to proof at trial consisting of compensatory damages; disgorgement of profits; rescission and restitution; and/or punitive damages for any and all breaches involving malice, fraud, or oppression including Defendant Breville's conscious disregard of Plaintiff's rights.

## FIFTH CAUSE OF ACTION

**(Unfair Competition Law — Business & Professions Code §§ 17200, *et seq*.)**

**(Against all Defendants)**

57. Plaintiff realleges and reincorporates paragraphs 12–24 above.

58. The conduct alleged herein by each and every Defendant constitutes unfair and unlawful business practices in violation of California Business & Professions Code § 17200 *et seq*.

On information and belief, Defendants stole Plaintiff's Trade Secrets and, along with IPE Solutions, are using the stolen trade secret information to induce Plaintiff's customers, suppliers, partners, and potential partners to become customers, suppliers, and partners of Defendants. Defendants' alleged Lanham Act violations are also unfair and unlawful business practices.

59. On information and belief, Defendants knew that by violating the Lanham Act and stealing Plaintiff's Trade Secrets without express permission for the benefit of gaining new customers, suppliers and partners in violation of the terms of their respective valid employment agreements, they were engaging in unfair business practices in violation of California law, including in violation of California Civil Code §§ 3426 *et seq*. and the Defend Trade Secrets Act. Plaintiff is informed and believes and, based thereon, alleges that Defendants have used, and continue to use, Plaintiff's Trade Secrets unfairly and unlawfully, in violation of their responsibilities and obligations to Plaintiff, as well as basic principles of fair competition.

60. As a direct result of these concerted actions, Plaintiff has suffered monetary, competitive, and irreparable harm and Plaintiff should be awarded restitution of all profits received by Defendants, in the past and future, as a result of having engaged in the wrongful conduct that has and will harm Plaintiff.

**<u>SIXTH CAUSE OF ACTION</u>**

**(Breach of Contract)**

**(Against Defendant Breville)**

61. Plaintiff realleges and reincorporates paragraphs 12–24 above.

62. The Employment Agreement and Severance Agreement executed by Defendant Breville are both binding, valid, and enforceable contracts. The covenants and provisions contained in both agreements are reasonably necessary to protect legitimate protectable interests in Plaintiff's Trade Secrets, confidential and proprietary information, customer relationships, and goodwill.

63. Plaintiff fully performed all of its obligations under both agreements.

64. Defendant Breville breached and continues to breach both agreements by stealing Plaintiff's Trade Secrets for his own and/or IPE Solutions' competitive use and benefit against Plaintiff; disclosing and/or divulging Plaintiff's Trade Secrets; and failing to return Plaintiff's Trade

Secrets. Defendant Breville also breached and continues to breach the Employment Agreement by failing to execute documents to perfect Byte Bridge's ownership of such information, including, but not limited to, Byte Bridge's trademark rights in the Foundational Liquid Cooling Certification (FLCC) program.

65. As a result of any of these breaches, Plaintiff has been injured and sustained irreparable injury. Plaintiff is threatened with losing the value of its confidential Trade Secrets in amounts which are not possible to determine, given the numerous implications for current and future business, unless Defendant Breville is enjoined and restrained by Court order.

66. Plaintiff has been and will continue to be damaged by Defendant Breville's breaches of contract and is entitled to all recoverable damages in an amount to be proven at trial.

67. Defendant Breville's Employment Agreement expressly provides for the award of attorneys' fees to the prevailing party in a legal proceeding to enforce any rights arising therefrom. As a result of Defendant Breville's breaches of contract, Plaintiff has been forced to retain counsel and incur attorneys' fees and costs. Plaintiff is entitled to an award of attorneys' fees and costs according to proof.

**SEVENTH CAUSE OF ACTION**

**(Intentional Interference with Contract and Prospective Economic Relations)**

**(Against all Defendants)**

68. Plaintiff realleges and reincorporates paragraphs 12–24 above.

69. At all times relevant herein, there were written and/or verbal contracts and/or relationships and/or potential relationships between Plaintiff and third-parties, including, but not limited to, customers, suppliers, current and/or former partners, that probably would have resulted in an economic benefit to Plaintiff. Defendants knew or should have known about the existence of these contracts and/or relationships between Plaintiff and its customers, suppliers, and current and/or former partners from Defendant Breville's employment at Plaintiff.

70. On information and belief, Defendants induced or attempted to induce Plaintiff's customers, suppliers, and current and/or former partners to work with Defendants instead of Plaintiff, using wrongful means. On information and belief, Defendants' interference has been

accomplished using wrongful means including, but not limited to, Defendants' wrongful use of misappropriated trade secrets, Plaintiff's Trade Secrets, and unlawful business tactics including the trademark infringement and Lanham Act violations above. Defendants' conduct was intended to disrupt the performance of Plaintiff's contracts and/or relationships. Defendants knew that disruption of performance of Plaintiff's contracts and/or relationships was certain or substantially certain to occur.

71. Defendants' actions caused actual interference with Plaintiff's contractual and/or prospective economic relationships, and caused Plaintiff to be damaged in an amount to be determined at the time of trial.

72. On information and belief, Defendants committed the acts alleged herein with knowledge of their wrongfulness, and with the intent to injure Plaintiff's business in conscious disregard of their legal obligations to refrain from such acts. In committing such acts, Defendants are guilty of malice, fraud and oppression, entitling Plaintiff to an award of exemplary and punitive damages in an amount appropriate to punish these Defendants and deter such conduct in the future.

## EIGHTH CAUSE OF ACTION

**(Negligent Interference with Contract and Prospective Economic Relations)**

**(Against all Defendants)**

73. Plaintiff realleges and reincorporates paragraphs 12–24 above.

74. At all times relevant herein, there were written and/or verbal contracts and/or relationships and/or potential relationships between Plaintiff and third-parties, including, but not limited to, customers, suppliers, current and/or former partners, that probably would have resulted in an economic benefit to Plaintiff. Defendants knew or should have known about the existence of these contracts and/or relationships between Plaintiff and its customers, suppliers, and current and/or former partners from Defendant Breville's employment at Plaintiff.

75. On information and belief, Defendants induced or attempted to induce Plaintiff's customers, suppliers, and current and/or former partners to work with Defendants instead of Plaintiff, using wrongful means. On information and belief, Defendants' interference has been accomplished using wrongful means including, but not limited to, Defendants' wrongful use of

misappropriated trade secrets, Plaintiff's Trade Secrets, and unlawful business tactics including the trademark infringement and Lanham Act violations above. Defendants knew or should have known that disruption of performance of Plaintiff's contracts and/or relationships was certain or substantially certain to occur if Defendants failed to act with reasonable care.

76. Defendants committed the acts alleged herein without the requisite reasonable care, which caused actual interference with Plaintiff's contractual and/or prospective economic relationships, and caused Plaintiff to be damaged in an amount to be determined at the time of trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1. Temporary, preliminary, and permanent injunctive relief to prevent Defendants from destroying the value of Plaintiff's Trade Secrets, compelling the return and destruction of Plaintiff's Trade Secrets, preventing Defendants from improperly using or disclosing Plaintiff's Trade Secrets in any way, and compelling Defendants to undertake all efforts consistent with returning Plaintiff's relationships with its customers, suppliers, and partners or potential partners to the status quo prior to the misappropriation and Lanham Act violations;

2. Actual and compensatory damages;

3. Unjust enrichment damages and disgorgement of profits;

4. Corrective advertising damages;

5. Rescission and restitution;

6. Declaratory relief that the FLCC program is Byte Bridge's trade secret;

7. A reasonable royalty;

8. Exemplary and treble damages under 18 U.S.C. § 1836(b)(3)(C); 15 U.S.C. § 1125(a); and California Civil Code § 3426.3(c);

9. Pre and post-judgment interest;

10. Attorneys' fees, witness fees, expert fees, and costs of suit; and

11. All such relief as the Court may deem just and proper.

/ / /

/ / /

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all triable issues, causes of action, and claims for which it has a constitutional, statutory, or other right to jury trial, including specifically all claims for compensatory damages and monetary relief pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: August 19, 2026

DONAHUE FITZGERALD LLP
Attorneys at Law

By: /s/ Chancellor W. Tseng
John C. Kirke
Chancellor W. Tseng
Attorneys for Plaintiff,
BYTE BRIDGE, INC.

# EXHIBIT A

Byte Bridge Inc

1502 Crocker Ave

Hayward, CA 94544

bytebridge

**EMPLOYMENT AND CONFIDENTIALITY AGREEMENT**

This Employment and Confidentiality Agreement ("Agreement") is entered into on Feb 03, 2025, by and between Byte Bridge, a corporation organized under the laws of California, USA, with its principal place of business located at 1502 Crocker Ave., Hayward CA 94544 herein after referred to as "Byte Bridge," and Employee Curtis H Breville , an individual with a mailing address of 13455 Kearney Street, Thornton CO 80602 Employee Residential Address hereinafter referred to as "Employee," collectively referred to as the "Parties."

1. **Employment**

**1.1 Position and Responsibilities:** Byte Bridge agrees to employ Employee in the capacity of **Global Pre-Sales Engineering Manager - Systems & Cooling** and Employee agrees to fulfill the responsibilities of this position and to comply with the terms and conditions outlined in this agreement.

**1.2 Location of Services:** Employee acknowledges and agrees to perform services at any location determined by Byte Bridge, which may be changed at Byte Bridge's discretion and without prior notice.

**1.3 Employment Term:** The employment relationship between Employee and Byte Bridge is at-will. Either party may terminate the employment relationship at any time, with or without cause, and with or without prior notice.

**1.4 Compensation:** Employee's compensation, including hourly wages for the hours worked and approved and benefits, will be as per the offer letter provided by Byte Bridge. Any changes or adjustments to the compensation and benefits will be governed by Byte Bridge's policies, procedures, and practices.

**1.5 Termination of Agreement**: This Agreement may be terminated by either party by providing the other party with a written notice of at least 2 weeks unless otherwise specified in the Agreement.

2. **Proprietary Information and Inventions**

**2.1 Proprietary Information Creation**: During Employee's employment with Byte Bridge, Employee may create, obtain, or have access to information with commercial value in the business in which Byte Bridge is engaged. This information is referred to as "Proprietary Information."

**2.2: Proprietary Information Defined:** By way of illustration, not limitation, Proprietary Information includes trade secrets, ideas, processes, drawings, blueprints, specifications, data,

Byte Bridge Inc

1502 Crocker Ave

Hayward, CA 94544

computer programs, software, hardware, firmware, other original works of authorship, know-how, improvements, discoveries, developments, designs, innovations, techniques, business development strategies, marketing plans, strategies forecasts, new products, unpublished financial statements, budgets, projections, licenses, prices, costs, strategic alliances, ventures, and customer and supplier lists.

The foregoing obligations of confidentiality and non-use shall not apply to any Proprietary

Information that:

2.2.1 was known to Byte Bridge's prior to the date of disclosure pursuant to this Agreement and not obtained or derived directly or indirectly from employee;

2.2.2 is or becomes public or available to the general public otherwise than through the act or default of Employee or the act or default of the Byte Bridge officers, employees, partners, agents, or independent contractors;

2.2.3 is obtained subsequent to any disclosure under this Agreement from a third party who is lawfully in possession of the information and which information is not subject to any confidential or non-use obligations owed to Byte Bridge or others;

2.2.4 has been furnished by Byte Bridge to a third party without similar restrictions on disclosure; or

2.2.5 is required to be disclosed pursuant to requirements of Federal, State, or Local statute, regulation or court order, provided that Employee delivers prior written notice to Byte Bridge of such pending discharge and gives Byte Bridge a reasonable opportunity to oppose such disclosure with the applicable authority.

**2.3 Ownership of Proprietary Information:** Employee acknowledges that all Proprietary Information is the sole property of Byte Bridge, and Byte Bridge is the owner of all patents, copyrights, trade secrets, or other Intellectual Property Rights related to Proprietary Information.

**2.4 Non-Disclosure**: Employee agrees to keep all Proprietary Information confidential and not to disclose, reproduce, or use such information without prior written consent from Byte Bridge.

**2.5 Assignment of Inventions**: Employee hereby assigns and transfers to Byte Bridge the Employee's entire right, title, and interest acquired during the period of employment in all Proprietary Information and Intellectual Property Rights therein, discovered, originated, made or conceived, or learned by the Employee alone or jointly during the period of employment which result, directly or indirectly, from any of the following:

Byte Bridge Inc

1502 Crocker Ave

Hayward, CA 94544

bytebridge

**2.5.1** the use of premises or equipment owned, leased, or contracted for by Byte Bridge or supplies or Proprietary Information of Byte Bridge;

**2.5.2** work conducted on the time of Byte Bridge or

**2.5.3** work performed for Byte Bridge

Employee further acknowledges that all original works of authorship made by the Employee (solely or jointly) within the scope of and during the period of his or her employment with Byte Bridge and which are protectable by copyright are "works made for hire," as the term is defined in the United States Copyright Act. Employee understands and agrees that the decision whether to commercialize or market any invention developed by Employee is within the sole discretion and for the sole benefit of Byte Bridge, and no royalty will be due to Employee.

Employee hereby waives all moral rights, which he or she may have or hereafter acquire in any Proprietary Information and any Intellectual Property Rights therein. Employee will, at Byte Bridge Inc's request, promptly execute a written assignment of title to Byte Bridge for any Proprietary Information and Intellectual Property Rights therein and a written waiver of all moral rights therein, and Employee will preserve all Proprietary Information as confidential information of Byte Bridge.

**2.6 Notice of Inventions: Execution of Documents.** Employee agrees to give Byte Bridge prompt written notice of his or her acquisition or creation of any Proprietary Information. Employee further agrees as to all Proprietary Information to assist Byte Bridge in every proper way (but at Byte Bridge's expense) to obtain and from time to time enforce patents, copyrights, mask works, and other rights and protections relating to the inventions. Employee also agrees to execute all documents for use in applying for and obtaining such patents, copyrights, mask works and agrees that other rights and protections relating to Proprietary Information shall continue beyond the termination of employment, but Byte Bridge shall compensate Employee at a reasonable rate after such termination for time actually spent, at Byte Bridge's request, on such assistance. In the event that Byte Bridge is unable, after reasonable effort, to secure signatures on any documents needed to effect any assignment hereunder or to apply for or prosecute any patent, copyright, mask work, or other right or protection relating to an invention, whether because of physical or mental incapacity of Employee or for any other reason, Employee hereby irrevocably designates and appoints Byte Bridge and its duly authorized officers and agents as his or her agent and attorney-in-fact, to act for and in his or her behalf and stead, to execute, and file any such application or applications and to do all other lawfully permitted acts to further the prosecution and issuance of patents, copyrights, mask works, or similar protections thereon with the same legal force and effect as if executed by them.

Byte Bridge Inc

1502 Crocker Ave

Hayward, CA 94544

bytebridge

**2.7 Return of Proprietary Information.** All Proprietary Information, including all written materials, records and documents, or other tangible materials made by Employee or materials that have come into his or her possession as a result of his or her employment with Byte Bridge concerning the business or affairs of Byte Bridge shall be the sole property of Byte Bridge ;upon the termination of his or her employment with Byte Bridge or upon the request of Byte Bridge Employee shall promptly deliver the same to Byte Bridge.

**2.8 Third-Party Information.** Employee acknowledges that Byte Bridge has and may, from time to time, receive from third parties their confidential or Proprietary Information which is subject to a duty on the part of Byte Bridge to maintain confidentiality of such information and to only use for limited purposes. Employee agrees that Employee owes Byte Bridge and such third parties, both during the duration of this Agreement and thereafter, a duty to hold such confidential or Proprietary Information in the strictest confidence and not to disclose it to any person, firm, or corporation, or to use it, except where necessary, in carrying out the services for Byte Bridge consistent with Byte Bridge's agreement with such third party.

**3. Client Defined.** The word "client," for purposes of this Employment and confidentiality agreement, refers to direct or indirect clients, vendors, or companies included in the business transaction for which the Employee has been introduced as a result of the employment with Byte Bridge Employee agrees to the above terms as fair and in line with industry standards.

**4. Prior Inventions.** Employee understands that all inventions, if any, patented or unpatented, which Employee made prior to beginning employment with Byte Bridge are excluded from the scope of this Agreement. To preclude possible uncertainty, Employee shall set forth in Exhibit A, attached, a complete list of all prior inventions that Employee will bring to Byte Bridge .This includes the numbers of all patents and patent applications and a brief description of all unpatented inventions which are not the property of a previous employer. Employee represents that this list is complete disclosure, and that if no items are on the list, Employee has no such prior inventions. Employee agrees to notify Byte Bridge in writing before Employee makes any disclosure or performs any work on behalf of Byte Bridge, which has the potential to threaten or cause a conflict with proprietary rights which Employee claims in any invention or idea. Employee agrees that if in the course of performing services under this Agreement, Employee incorporates into Byte Bridge's Proprietary Information or otherwise utilizes any invention, improvement, development, concept, discovery, or other Proprietary Information owned by Employee or in which Employee has an interest, Byte Bridge is hereby granted and shall have non-exclusive, royalty-free, perpetual, irrevocable, worldwide license to make, have made, modify, use, and sell such item as part of or in connection with such Proprietary Information.

**5. Conflicting Obligations:**

**5.1 Trade Secrets of Others:**

Employee represents that he or she has not brought, and will not bring with him or her to Byte Bridge, disclose to Byte Bridge, or through the performance of his or her responsibilities use, any devices, materials, or documents of a former employer or other party that are proprietary or not generally available to the public, unless he or she has obtained express written consent from such party for their possession or use. The only devices, materials, or documents of a former employer or other party that are proprietary or not generally available to the public that Employee will bring to Byte Bridge, if any, are identified in Exhibit A attached. As to each identified item, Employee represents that Employee has obtained written consent for their possession and use and has delivered a copy of such written authorization to Byte Bridge Employee hereby indemnifies and holds harmless Byte Bridge from all claims, damages, costs, expenses, fines, and fees (including reasonable attorney's fees) arising out of assertions by third parties of superior rights to any intellectual property brought to Byte Bridge and incorporated by Employee in any deliverable pursuant to this Agreement."

**5.2 Conflicting Confidentiality Agreements:** Employee agrees that during his or her employment, Employee will not breach any obligation of confidentiality Employee has to a former employer, client, or any other entity or individual. Employee represents that Employee's performance under the terms of this Agreement, as Employee to Byte Bridge does not and will not breach any agreement to keep in confidence Proprietary Information acquired by Employee in confidence or in trust. Employee has neither entered into, nor shall enter into, any agreement, either written or oral, in conflict herewith.

**6. Covenant Not to Compete and Not to Interfere:** Exhibit B attached hereto, is incorporated herein by reference.

**7. Covenant Not to Solicit:** Exhibit C attached hereto, is incorporated herein by reference.

**8. Covenant of Confidentiality:** Exhibit D attached hereto, is incorporated herein by reference.

**9. Notice:** Except as expressly provided otherwise, all notices, requests, or other communications required hereunder shall be in writing and shall be given in hand, national overnight courier services, or U.S. mail, certified or registered, postage prepaid, return receipt requested, addressed to the respective party at the applicable address set forth below, or to any party at such other addresses as shall be specified in writing by such party to the other parties in accordance with the terms and conditions of this Section. All notices, requests, or communications shall be deemed effective upon receipt.

Byte Bridge Inc

1502 Crocker Ave

Hayward, CA 94544

bytebridge

**10. Equitable Remedies:** Employee specifically acknowledges that a violation of Section 2, 3, 4, 5, and statements 6, 7, or 8 of this Agreement could cause irreparable injury toByte Bridge and its business or property. Employee, therefore, agrees that in the event of his or her breach of any of the terms and conditions of Section 2, 3, 4, 5, and statements 6, 7, or 8 of this Agreement, Byte Bridge shall be entitled, if it so elects, to institute and prosecute proceedings in any court of competent jurisdiction in equity to enjoin him or her from further violation of such provisions. The remedies provided herein shall be cumulative and in addition to any and all other remedies which either party may have at law or in equity. Remedies at law to be sought in accordance with Section 11 and 12 below.

**11. Choice of Forum:** This Agreement shall be governed by, construed, and enforced in accordance with the laws of the state where Employee is domiciled and/or is providing services for Byte Bridge (regardless of that jurisdiction or any other jurisdiction's choice of law principles).

**12. Dispute Resolutions:**

**12.1 Arbitration:** In the event that any dispute or controversy arises out of, or relates to this Agreement, the dispute or controversy shall be settled by arbitration, to be held where Employee is domiciled and/or is providing services for Byte Bridge in accordance with the employment dispute resolution rules then in effect of the American Arbitration Association by a single arbitrator. The arbitrator may grant injunctions or other relief in such dispute or controversy. The decision of the arbitrator shall be final, conclusive, and binding on the parties to the arbitration. Judgment may be entered on the arbitrator's decision in any court having jurisdiction. Judgment may include the award of costs and fees. Employee understands that each party's consent to resolve disputes by arbitration, as opposed to the judicial system is consideration for the other party's promise. Employee further understands that he or she has been offered employment byByte Bridge in consideration of Employee's promises to arbitrate disputes.

**12.2 Waiver:** This arbitration clause constitutes a waiver of Employee's right to a jury trial and relates to the resolution of all disputes relating to all aspects of the employer/employee relationship (except as provided in Section 10 hereof), including, without limitation the following claims:

**12.2.1** any and all claims for wrongful discharge of employment, breach of contract, express or implied, breach of the covenant of good faith and fair dealing, negligent or intentional infliction of emotional distress, misrepresentation, interference with contract or prospective economic advantage, payment of wages, defamation and libel;

**12.2.2** any and all claims for violation of any federal, state, or municipal statute, including, without limitation Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Age

Byte Bridge Inc

1502 Crocker Ave

Hayward, CA 94544

bytebridge

Discrimination in Employment Act of 1967, the Americans with Disabilities Act of 1990, the Fair Labor Standards Act; or

**12.2.3** any and all claims arising out of any other laws and regulations relating to employment or employment discrimination.

**13. Notification of New Employer:** In the event that Employee leaves the employ of Byte Bridge Employee hereby consents to notify his or her new employer about his or her rights and obligations under this Agreement.

**14. Modifications; Assignment:** This Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors, heirs, and permitted assignees. This Agreement may not be altered, modified, changed, or discharged except in writing signed by both the Parties.

**15. Validity:** If any one or more provisions (or any part thereof) of this Agreement shall be held invalid, illegal, or unenforceable in any respect, that provision shall be construed so as to most closely reflect the original intent of the parties, but still be enforceable, and the validity, legality, and enforceability of the remaining provisions (or any part thereof) shall not in any way be affected or impaired thereby.

**16. Changes in Employability:** Employee agrees that it is their sole responsibility to inform Byte Bridge should there be a change in their employability status, including, but not limited to, changes in immigration status. Byte Bridge will continue to employ Employee so long as the Employee is authorized by the United States Government to work. If there is a change in status, it is the responsibility of Employee to notify Byte Bridge of the status change in writing. Byte Bridge is not responsible to change status or do anything further if Employee is no longer employable.

**17. Waiver of Rights.** No waiver of any rights arising under this Agreement shall be effective unless in writing and signed by the party against whom the waiver is enforced. A delay or failure of either party to enforce at any time any provision of this Agreement does not constitute a waiver of such provision, or any other provision, of this Agreement. No waiver of, delay, or failure to enforce any provision of this Agreement shall in any way be considered a continuing waiver or be construed as a subsequent waiver of any such provision, or any other provision of this Agreement.

**18. Volitional Agreement Acknowledgement.** Employee acknowledges that he or she has had the opportunity to consult with the advisor of his or her choice and that he or she has freely and voluntarily entered into this Agreement.

**19. Injunctive Relief and Liability:** In addition to the above, Employee agrees that Byte Bridge shall be entitled to injunctive relief (both temporary and permanent) for any breach or proposed breach of this Agreement. In addition, the party who is found to have breached this Agreement

Byte Bridge Inc

1502 Crocker Ave

Hayward, CA 94544

shall be liable for any damages, costs, and fees incurred by the other non-breaching party relating to such breach.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the day and year written below:

DocuSigned by:
Marvin Cunanan
738AB714964E4E0...
**Marvin Cunanan**
2/12/2025

Signed by:
Curtis Breville
E464553C792D41F...
**Curtis H Breville**
2/5/2025

Byte Bridge Inc

1502 Crocker Ave

Hayward, CA 94544

bytebridge

**EXHIBIT A**

Prior Inventions

THIS EXHIBIT A is made a part of and is subject to that certain Employment and Non-Compete Agreement ("Agreement") by and among Byte Bridge a California corporation, with a business address of 1502 Crocker Ave., Hayward CA 94544 hereinafter referred to as "Byte Bridge," and Curtis H Breville an individual with a mailing address of 13455 Kearney Street, Thornton CO 80602 ("Employee"), (collectively the "Parties").

Employee understands that their services have been contracted by Byte Bridge who has or may commit them to provide services to Byte Bridge and its clients.

1. The following is a complete list of all inventions or improvements, as referenced in the Agreement, that have been made or conceived or first reduced to practice by Employee, alone or jointly with others, prior to their engagement by Byte Bridge:

( ) No inventions or improvements.

( ) See below:

______________________________________________________________________

( ) Additional sheets attached.

2. Employee proposes to bring to their employment (or consulting, if applicable) the following devices, materials, and documents of a former employer or other party that are proprietary or are not generally available to the public, which materials and documents may be used in their employment pursuant to the express written authorization of their former employer or other party (a copy of which is attached hereto):

( ) No materials.

( ) See below:

DocuSigned by:
Marvin Cunanan
738AB714964E4E0...
**Marvin Cunanan**
2/12/2025

Signed by:
Curtis Breville
E464553C792D41F...
**Curtis H Breville**
2/5/2025

Byte Bridge Inc

1502 Crocker Ave

Hayward, CA 94544

bytebridge

**EXHIBIT B**

**Covenant Not to Compete and Not to Interfere**

THIS EXHIBIT B is made a part of and is subject to the Employment and Confidentiality Agreement ("Agreement") by and among Byte Bridge a California incorporation, with a business address of 1502 Crocker Ave., Hayward CA 94544 hereinafter referred to as "Byte Bridge," and Curtis H Breville an individual with a mailing address of 13455 Kearney Street, Thornton CO 80602 ("Employee"), (collectively the "Parties").

Employee understands that they are employed by Byte Bridge who has or may commit them to provide services to Byte Bridge and its clients.

In consideration of employment and salary, and other good and valuable consideration, including the use on behalf of Byte Bridge or its client's facilities or materials, or of private or Proprietary Information owned by Byte Bridge, its suppliers, or client, Employee agrees to the following provisions:

**1. Ability to Provide Services:** Employee represents, warrants, and covenants that (1) he or she is not under any contractual or legal obligations with any entity, such as a restrictive covenant or non-competition agreement, that could interfere with the performance of Employee's services, and (2) all statements and information concerning Employee's experience, qualifications, skills, and availability, including, but not limited to, any resumes or references, provided by Employee are true and correct.

**2** Employee or anyone acting on his or her behalf, directly or indirectly, shall not provide or advise another of the opportunity to provide any services to a client introduced through Byte Bridge .The word "client" refers to direct or indirect clients, vendors, or companies included in the business transaction in which Employee has been introduced as a part of the employment with Byte Bridge

**3.** Employee or anyone acting on his or her behalf, directly or indirectly, cannot retain or solicit for himself or herself or for another party the services of any of Byte Bridge's clients, employees, or other contractors introduced through Byte Bridge For the purposes of the above paragraph, "introduced through Byte Bridge" means where a client, employee, or other sub-vendor came to the attention of Employee in any manner through Byte Bridge or is identified in any agreement with Byte Bridge, sub-vendor, or employee.

Employee, by way of signature, acknowledges the global presence of Byte Bridge and understands that Byte Bridge's contractual relations span many states and into various countries, thereby giving full force and effect to this covenant not to compete wherever Byte Bridge's clients, contractual relationships, or interests may lie.

Byte Bridge Inc

1502 Crocker Ave

Hayward, CA 94544

bytebridge

**4. Forum Selection, Choice of Law, and Attorney Fees:** In the event of any dispute arising out of or related to this Exhibit B Covenant Not to Compete and Not to Interfere, the parties agree to resolve all disputes as provided in Paragraphs 10, 11, and 12 of the Agreement.

**5. Beneficiaries:** Employee understands that Byte Bridge and its client have (1) entered into a binding agreement in reliance on Employee's execution of this Exhibit B Covenant Not to Compete and Not to Interfere, and (2) would suffer damages if any of the representations set forth herein are inaccurate or if Employee fails to abide by any of the covenants set forth herein.

**6. Indemnification:** Employee agrees to indemnify and hold harmless Byte Bridge and its client, their owners, officers, directors, agents, and employees, from and against all liabilities and costs (including attorney's fees and court costs) attributable to any claim relating to or arising out of the services that Employee provides hereunder or a breach of any provision of this consent, brought by any other party, including private parties or governmental entities.

**7. Survival:** The above terms shall survive for six months ( 6months) termination, cancellation, or expiration of this Exhibit B Covenant Not to Compete and Not to Interfere and the work or assignments for which Employee was engaged.

IN WITNESS WHEREOF, the Parties have executed this Covenant Not to Compete and Not to Interfere as of the day and year written below:

DocuSigned by:
Marvin Cunanan
738AB714964E4E0...
**Marvin Cunanan**
2/12/2025

Signed by:
Curtis Breville
E464553C792D41F...
**Curtis H Breville**
2/5/2025

Byte Bridge Inc

1502 Crocker Ave

Hayward, CA 94544

bytebridge

**EXHIBIT C Covenant Not to Solicit**

**THIS EXHIBIT C** is made a part of and is subject to that certain Employment and Confidentiality Agreement ("Agreement") by and among Byte Bridge, a California corporation, with a business address of 1502 Crocker Ave., Hayward CA 94544 hereinafter referred to as "Byte Bridge," and Employee Curtis H Breville with a mailing address of 13455 Kearney Street, Thornton CO 80602 (collectively, the "Parties").Employee understands that they are employed by Byte Bridge, who has or may commit them to provide services to Byte Bridge and its clients. In consideration of salary and other good and valuable consideration, including the use on behalf of Byte Bridge or its client's facilities or materials, or of private or Proprietary Information owned by Byte Bridge Inc, its suppliers, or client, Employee agrees to the following provisions:

**1. Non-Solicitation and Outside Employment.** During the period that Employee is employed by Byte Bridge he or she agrees not to directly or indirectly solicit or offer any services to a client for which the employee will receive compensation or other financial benefits. Further, employee agrees that any outside employment must be communicated to Byte Bridge who reserves the right to restrict such employment during the employee's tenure at Byte Bridge

Employee, by way of signature, acknowledges the global presence of Byte Bridge and understands that Byte Bridge's contractual relations span many states and into various countries, thereby giving full force and effect to this covenant not to solicit wherever Byte Bridge's clients, contractual relationships, or interests may lie.

**2. Forum Selection, Choice of Law, and Attorney Fees.** In the event of any dispute arising out of or related to this Exhibit C Covenant Not to Solicit, the Parties agree to resolve all disputes as provided in Paragraphs 10, 11, and 12 of the Agreement.

**3. Beneficiaries.** Employee understands that Byte Bridge and its clients have entered into a binding agreement in reliance on Employee's execution of this Exhibit C Covenant Not to Solicit and would suffer damages if any of the representations set forth herein are inaccurate, or if Employee fails to abide by any of the covenants set forth herein.

**4.Indemnification.** Employee agrees to indemnify and hold harmless Byte Bridge and its clients, their owners, officers, directors, agents, and employees, from and against all liabilities and costs (including attorney's fees and court costs) attributable to any claim relating to or arising out of the services that Employee provides hereunder or a breach of any provision of this consent, brought by any other party, including private parties or governmental entities.

**5. Survival.** The above terms shall survive upto 6 months of termination, cancellation, or expiration of this Exhibit C Covenant Not to Solicit and the work or assignments for which Employee was engaged.

Byte Bridge Inc

1502 Crocker Ave

Hayward, CA 94544

bytebridge

In Witness Whereof, the Parties have executed this Covenant Not to Solicit as of the day and year written below:

DocuSigned by:
Marvin Cunanan
738AB714964E4E0...
**Marvin Cunanan**
2/12/2025

Signed by:
Curtis Breville
E464553C792D41F...
**Curtis H Breville**
2/5/2025

Byte Bridge Inc

1502 Crocker Ave

Hayward, CA 94544

bytebridge

**EXHIBIT D**

**Covenant of Confidentiality**

**THIS EXHIBIT D** is made a part of and is subject to that certain Employment and Confidentiality Agreement ("Agreement") by and among Byte Bridge, a California corporation, with a business address of 1502 Crocker Ave., Hayward CA 94544hereinafter referred to as "Byte Bridge," and Curtis H Breville an individual with a mailing address of 13455 Kearney Street, Thornton CO 80602 (collectively, the "Parties").

Employee understands that they are employed by Byte Bridge, who has or may commit them to provide services to Byte Bridge and its clients. In consideration of salary and other good and valuable consideration, including the use on behalf of Byte Bridge or its client's facilities or materials, or of private or Proprietary Information owned by Byte Bridge Inc, its suppliers, or clients, Employee agrees to the following provisions:

1. **Confidential Information.** Employee agrees to keep in strictest confidence and agrees to refrain from, unless expressly authorized in writing by Byte Bridge or its client, to publish or disclose, whether orally or in writing, during and after the period of Employee's work or assignment, any confidential, private, or Proprietary Information of Byte Bridge, suppliers, or clients. This includes, but is not limited to, specifications, requirements, drawings, sketches, models, designs, methodologies, processes, know-how, research and development, samples, tools, computer programs, software, source code, trade secrets, product plans, projects, inventions, engineering information, hardware configuration information, technical information or data, financial information, business plans, other business information or data, client information or data, vendor information, market information, or marketing plans, whether written, oral, or otherwise. This applies to all information which Employee may acquire, learn, develop, or create by reason of such work or assignment (collectively "client confidential information"). Employee agrees to use client confidential information only in connection with Employee's performance of work or assignments for the client and agrees to refrain from using client confidential information for any other purpose.

2. **Disclosures.** Employee will not disclose client confidential information to any other employee of Byte Bridge unless such other employee has executed a confidentiality agreement similar to this Agreement and is working on the same project as Employee.

3. **Return of Information.** Upon request by the client, Employee shall return to the client all client confidential information received in tangible form or agree to destroy all such client confidential information and certify in writing to such destruction.

Byte Bridge Inc

1502 Crocker Ave

Hayward, CA 94544

bytebridge

**4. Non-Disclosure.** Employee will not disclose to the client, its suppliers, or any of its employees any information that is or may be proprietary or confidential to any third party, including but not limited to Employee's current or former employer or any of Employee's current or former employer's other clients unless Employee has the right to disclose such information and such information is relevant to Employee's work or assignment. Except for intellectual property assigned to the client under the Agreement, all other specifications, drawings, sketches, models, samples, tools, computer, or other apparatus programs, technical or business information or data, written, oral, or otherwise, furnished by Employee to the client under this Exhibit D Covenant of Confidentiality or in contemplation of the work or assignment to be performed by Employee shall not be considered confidential or proprietary.

**5. Forum Selection, Choice of Law, and Attorney Fees.** In the event of any dispute arising out of or related to this Exhibit D Covenant of Confidentiality, the Parties agree to resolve all disputes as provided in Paragraphs 10, 11, and 12 of the Agreement.

**6. Beneficiaries.** Employee understands that Byte Bridge and its clients have entered into a binding agreement in reliance on employee's

DocuSigned by:
Marvin Cunanan
738AB714964E4E0...
**Marvin Cunanan**
2/12/2025

Signed by:
Curtis Breville
E464553C792D41F...
**Curtis H Breville**
2/5/2025

# EXHIBIT B

**SEVERANCE AGREEMENT AND GENERAL RELEASE**

This Severance Agreement and General Release (“Agreement”) is entered into between **Byte Bridge Inc.** (“Company”) and **Curtis Breville** (“Employee”).

**1. Separation of Employment**

Employee’s employment with the Company will end effective **December 17, 2025** (“Separation Date”).

**2. Severance Pay**

Subject to Employee’s execution of this Agreement and compliance with its terms, the Company will continue to pay Employee their regular base compensation, less applicable withholdings, through **December 31, 2025**, in accordance with the Company’s normal payroll practices.

This severance pay is provided in addition to all wages, compensation, and benefits to which Employee is otherwise entitled by law.

**3. Final Wages and Benefits**

Employee will receive all final wages, including any accrued and unused vacation pay, in accordance with Colorado law. Employee’s participation in Company benefit plans will end in accordance with the applicable plan documents and legal requirements, including COBRA.

**4. Limited Non-Solicitation**

**(a) Employee Non-Solicitation**

For a period of twelve (12) months following the Separation Date, Employee agrees not to knowingly and directly solicit for employment any individual who is an employee of the Company at the time of such solicitation and with whom Employee worked or had material professional contact during the twelve (12) months immediately preceding the Separation Date.

This restriction does not prohibit general job advertisements not specifically targeted at Company employees, responses to unsolicited inquiries from Company employees, or the employment of any individual who independently seeks employment with Employee without solicitation.

**(b) Client and Customer Non-Solicitation**

For a period of twelve (12) months following the Separation Date, Employee agrees not to knowingly and directly solicit any client or customer of the Company with whom Employee had material business contact during the twelve (12) months immediately preceding the Separation Date for the purpose of providing competing services, where such solicitation would require or result from the use or disclosure of the Company's confidential or proprietary information.

**(c) No Non-Compete; Lawful Intent**

The parties expressly agree that this Section is not intended to be, and shall not be construed as, a non-competition agreement. Nothing in this Agreement restricts Employee from engaging in lawful employment or competition. This Section shall be interpreted and enforced only to the maximum extent permitted under applicable California and Colorado law.

**(d) Reformation**

If any portion of this Section is held unenforceable, a court of competent jurisdiction is authorized to modify the provision to the minimum extent necessary to render it enforceable while preserving the parties' original intent.

**5. Confidentiality of Company Information**

Employee agrees to continue to maintain the confidentiality of the Company's trade secrets and confidential or proprietary information, including but not limited to non-public business strategies, financial information, pricing, customer data, and internal operations.

Nothing in this Agreement prohibits Employee from reporting possible violations of law to any governmental agency, participating in a government investigation, making disclosures protected by whistleblower laws, or discussing wages, hours, or other terms and conditions of employment as protected by law.

**6. Confidentiality of Separation**

Employee agrees to keep confidential the nature and terms of Employee's separation and this Agreement, except to immediate family members, legal or tax advisors, or as required by law.

**7. Non-Disparagement**

Employee agrees not to make any false or knowingly misleading statements that would reasonably be expected to harm the reputation of the Company or its officers, directors, or employees. This provision does not prohibit truthful statements or legally protected communications.

**8. Release of Claims**

In exchange for the severance benefits described above, Employee knowingly and voluntarily releases and forever discharges the Company and its past, present, and future affiliates, officers, directors, employees, and agents from any and all claims, demands, or causes of action arising out of or relating to Employee's employment or separation, whether known or unknown, to the fullest extent permitted by law.

**9. California Civil Code Section 1542 Waiver**

Employee expressly waives the protections of California Civil Code section 1542, which provides:
"A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release."

**10. Claims Not Waived**

This Agreement does not waive claims that cannot be waived as a matter of law, claims arising after execution of this Agreement, or rights to unemployment insurance or workers' compensation benefits.

**11. Voluntary Execution and Right to Revoke**

Employee acknowledges that Employee has been advised to consult with an attorney before signing this Agreement, has been given at least twenty-one (21) days to consider this Agreement, and may revoke this Agreement within seven (7) days after signing by providing written notice to the Company. This Agreement becomes effective on the eighth (8th) day after execution if not revoked.

**12. No Admission of Liability**

This Agreement does not constitute an admission of wrongdoing or liability by the Company.

**13. Governing Law and Venue**

This Agreement shall be governed by and construed in accordance with the laws of the State of Colorado, without regard to conflict-of-laws principles. Any action arising under this Agreement shall be brought in a court of competent jurisdiction in Colorado.

**14. Severability**

If any provision of this Agreement is held unenforceable, the remaining provisions shall remain in full force and effect.

**15. Entire Agreement**

This Agreement constitutes the entire agreement between the parties regarding Employee's separation and supersedes all prior agreements or understandings.

---

**EMPLOYEE ACKNOWLEDGMENT**

Employee Signature: Curtis Breville

Date: 12/20/2025

Company Representative: Marvin Cunanan

Date: 12/19/2025