JOHN C. KIRKE, #175055
jkirke@donahue.com
CHANCELLOR W. TSENG, #322236
CTseng@donahue.com
DONAHUE FITZGERALD LLP
Attorneys at Law
1999 Harrison Street, 26th Floor
Oakland, California 94612-3520
Telephone: (510) 451-3300
Facsimile: (510) 451-1527

Attorneys for Plaintiff,
BYTE BRIDGE, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| BYTE BRIDGE, INC., a Nevada corporation,<br><br>Plaintiff,<br><br>v.<br><br>CURTIS H. BREVILLE, an individual; C.H. BREVILLE ENTERPRISES LLC, a Colorado limited liability company, dba IPE SOLUTIONS; and DOES 1-10, inclusive,<br><br>Defendants. | Case No.<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION**<br><br>[Filed concurrently with Declarations of Marvin Cunanan and Chancellor Tseng, Esq.; Ex Parte Motion; Request for Judicial Notice; and [Proposed] Order]<br><br>Complaint Filed: |

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..... 1
II. STATEMENT OF FACTS ..... 1
A. Background ..... 1
B. The Employment and Severance Agreements ..... 1
C. Defendant Breville's Employment ..... 2
D. After Defendant Breville's Employment ..... 4
E. Informal Dispute Resolution and Ex Parte Notice ..... 5
III. LEGAL STANDARD ..... 5
IV. ARGUMENT ..... 6
A. A TRO and Preliminary Injunction are Required to Enjoin Defendants From Using or Disseminating Plaintiff's Trade Secrets. ..... 6
1. Plaintiff is Highly Likely to Succeed on the Merits of its Trade Secret Misappropriation and Related Claims. ..... 7
2. Plaintiff Will Suffer Imminent and Irreparable Injury Unless the Court Issues Immediate Injunctive Relief. ..... 9
3. Plaintiff's Injuries Substantially Outweigh Any Costs to Defendants for Complying With the Requested TRO and Preliminary Injunction. ..... 10
4. The Requested Relief Supports the Strong Public Interest in Favor of Protecting Trade Secrets. ..... 10
B. No Injunction Bond is Required. ..... 11
C. A Preservation Order is Necessary to Prevent the Destruction of Essential Evidence. ..... 11
V. CONCLUSION ..... 12

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**


*Albert's Organics, Inc. v. Holzman*, 445 F.Supp.3d 463 (N.D. Cal. 2020) ....9

*All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011)....6

*Bambu Franchising, LLC v. Nguyen*, 537 F.Supp.3d 1066 (N.D. Cal. 2021) ....7, 10

*Bright Sols. For Dyslexia, Inc. v. Doe 1*, No. 15-cv-01618- JSC, 2015 WL 5159125 (N.D. Cal. Sept. 1, 2015) ....11

*Cisco Sys. v. Chung*, 462 F.Supp.3d 1024 (N.D. Cal. 2020) ....8

*Comet Techs. USA Inc. v. Beuerman*, No. 18-CV- 01441-LHK, 2018 WL 1990226 (N.D. Cal. Mar. 15, 2018) ....6, 10

*Commure, Inc v. Canopy Works, Inc.*, 792 F.Supp.3d 971 (N.D. Cal. 2025) ....11

*Henry Schein, Inc. v. Cook*, 191 F.Supp.3d 1072 ....10

*Henry Schein, Inc. v. Cook*, No. 16-cv-03166-JST, 2016 WL 3418537 (N.D. Cal. Jun. 22, 2016) ....9

*Jorgensen v. Cassiday*, 320 F.3d 906 (9th Cir. 2003)....11

*Pyro Spectaculars North, Inc. v. Souza*, 861 F.Supp.2d 1079 (E.D. Cal. 2012)....10

*WeRide Corp. v Kun Huang*, 379 F.Supp.3d 834 (N.D. Cal. 2019) ....9, 10

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ....6


**California Cases**


*C.R. v. Tenet Healthcare Corp.*, 169 Cal.App.4th 1094 (2009)....8

**Federal Statutes**

18 U.S.C.
§ 1836 .......... 7
§ 1836(b)(3)(A) .......... 6
§ 1836, *et seq*. .......... 7
§ 1839(3) .......... 6
§ 1839(5) .......... 6
§ 1839(6) .......... 6

Defend Trade Secrets Act .......... 2

**California Statutes**

Cal. Civ. Code
§ 3426 .......... 7
§ 3426.1(a) .......... 6
§ 3426.1(b) .......... 6
§ 3426.1(d) .......... 6
§ 3426.2(a) .......... 6

California Uniform Trade Secrets Act .......... 2

# I. INTRODUCTION

This is a trade secret misappropriation action seeking emergency injunctive relief to stop Plaintiff's previous employee from using trade secrets he developed for Plaintiff. Defendant Breville, as Plaintiff's previous Vice President, helped develop and offer Plaintiff's Foundational Liquid Cooling Certification ("FLCC") training program to Plaintiff's clients and potential customers in 2025. A year after leaving Plaintiff's employ, Mr. Breville is now selling an identical FLCC program through his new company and direct competitor, IPE Solutions.

Through the use of historical internet archives and Mr. Breville's own sworn federal trademark filings, Plaintiff can demonstrate a strong likelihood of proving Mr. Breville developed the FLCC program during his Byte Bridge employment. Such misappropriation continues to cause Plaintiff irreparable harm, and the balance of hardships tips in favor of granting injunctive relief.

# II. STATEMENT OF FACTS

## A. Background

The following allegations are largely taken from the concurrently filed Complaint and attested to by the declaration from Marvin Cunanan, Plaintiff's Co-Founder and General Manager.

Plaintiff Byte Bridge, Inc. ("Plaintiff" or "Byte Bridge") is a global IT solutions provider with entities and service locations across six continents. Cunanan Decl., ¶ 2. Plaintiff possesses deep expertise in data centers and workplace solutions. *Id*. On a global basis, Plaintiff also helps companies bridge technological gaps and scaling issues. *Id.*

Defendant Curtis H. Breville ("Defendant Breville" or "Mr. Breville") is an individual and Colorado resident. From February 3 to December 17, 2025, Plaintiff employed Mr. Breville initially as its Global Pre-Sales Engineering Manager – Systems and Cooling, then as its Vice President of Data Center Cooling Programs and GTM. *Id.* at ¶ 3.

## B. The Employment and Severance Agreements

At the start of his employment, Mr. Breville reviewed and signed a standard "Employment and Confidentiality Agreement" dated February 3, 2025. Cunanan Decl., ¶ 4; **Exhibit A**, "**ECA**". Pursuant to the ECA, Mr. Breville specifically acknowledged that any "information with commercial value in the business in which Byte Bridge is engaged" is Plaintiff's "Proprietary

Information." *Id.* at § 2.1. The Proprietary Information definition, which was given by way of illustration only, specifically included "trade secrets, ideas, processes…know-how…designs, innovations, techniques, business development strategies…" and "customer and supplier lists." *Id.* at § 2.2. Mr. Breville acknowledged that Plaintiff was and is the sole owner of all Proprietary Information, including its trade secrets and related intellectual property rights. *Id.* at § 2.3. Mr. Breville agreed to "keep all Proprietary Information confidential and not to disclose, reproduce, or use such information without prior written consent from Byte Bridge." *Id.* at § 2.4. Further, Mr. Breville assigned and transferred to Plaintiff any and all of his right, title, and interest acquired in the Proprietary Information and related intellectual property rights during his employment with Byte Bridge. *Id.* at § 2.5.

Within the same ECA, Mr. Breville agreed to give Plaintiff prompt written notice of his acquisition or creation of any Proprietary Information, and to execute documents to perfect Byte Bridge's ownership of such information. *Id.* at § 2.6. Mr. Breville also agreed to return all Proprietary Information he created or possessed to Byte Bridge upon employment termination. *Id.* at § 2.7. Finally, Mr. Breville was given the opportunity to disclose and claim any prior inventions belonging to him before his employment with Plaintiff. *Id.* at § 4. Mr. Breville did not disclose any such inventions. *Id.*

At the end of Mr. Breville's employment, Mr. Breville reviewed and signed a "Severance Agreement and General Release" dated December 17, 2025. Cunanan Decl, ¶ 5; **Exhibit B,** "**SAGR**". Pursuant to the SAGR, Mr. Breville agreed to not solicit any Byte Bridge client, customer, or employee for a period of twelve (12) months. *Id.* at § 4. Mr. Breville also agreed to keep confidential all of Byte Bridge's trade secrets and Proprietary Information, which included "non-public business strategies, financial information, pricing, customer data, and internal operations." *Id.* at § 5. Collectively, Plaintiff's statutorily-defined trade secrets under the Defend Trade Secrets Act; the California Uniform Trade Secrets Act; and its Proprietary Information are referred to herein as "Trade Secrets."

### C. Defendant Breville's Employment

In the course and scope of his employment as Plaintiff's former Vice President, Mr. Breville

participated in management of the corporation. Cunanan Decl., ¶ 6. Mr. Breville also possessed and would exercise some discretionary authority on behalf of Byte Bridge. *Id.*

In the course and scope of his employment as Plaintiff's former Vice President, Mr. Breville also handled and helped develop Plaintiff's Trade Secrets. *Id.* Such Trade Secrets often related to Plaintiff's industry technology. *Id.* Specifically, Mr. Breville helped develop Plaintiff's Foundational Liquid Cooling Certification Program and its related materials ("FLCC"). *Id.* Plaintiff helped develop the FLCC program while Byte Bridge's employee. *Id.* The FLCC program was and is part of the Byte Bridge's commercial offerings for the benefit of its clients and potential customers. *Id.* Mr. Breville did not disclose the FLCC as a prior invention in his Employment Agreement or at any time before starting work at Byte Bridge. *Id.* Plaintiff treats its FLCC program as part of its Trade Secrets. *Id.*

In 2025, Plaintiff made further investments into its FLCC program. *Id.* at ¶ 7. Plaintiff commenced intellectual property protections and launched a dedicated FLCC program webpage on May 15, 2025.[1] *Id.*; **Exhibit C**. Indeed, Mr. Breville's profile, including his own name, biography, and photo, was listed on Plaintiff's FLCC program webpage on September 14, 2025.[2] *Id.*. During his employment, Mr. Breville used Plaintiff's name and the FLCC brand to promote Plaintiff and its FLCC program to the wider industry, including potential customers. *Id.*.

Mr. Breville took an active role in designing Byte Bridge's dedicated FLCC program webpage that was launched on May 15, 2025. *Id.* at ¶ 8; **Exhibit D**. An internal email from May 13, 2025 sought Mr. Breville's input on Byte Bridge's upcoming FLCC program webpage. *Id*. With Mr. Breville's knowledge, Plaintiff also began exploring potential trademarking options for its

---

[1] BYTEBRIDGE FLCC™ (FOUNDATIONAL LIQUID COOLING CERTIFICATION), https://www.bytebt.com/foundational-liquid-cooling-certification/ (last visited July 23, 2026); *see also* WAYBACK MACHINE, https://web.archive.org/web/20250524101830/https://www.bytebt.com/foundational-liquid-cooling-certification/ (last visited July 23, 2026).

[2] WAYBACK MACHINE, https://web.archive.org/web/20250914152135/https://www.bytebt.com/foundational-liquid-cooling-certification/ (last visited July 23, 2026).

FLCC program in 2025. *Id.* In fact, on May 6, 2025, Mr. Breville internally suggested to Byte Bridge's management that Byte Bridge should "trademark[] FLCC so that nobody else can copy it and put out their own[.]" *Id.*

**D. After Defendant Breville's Employment**

After his employment ended, Mr. Breville launched his own company, Defendant C.H. Breville Enterprises LLC dba IPE Solutions ("IPE Solutions"). *Id.* at ¶ 9. Mr. Breville began targeting Plaintiff's customers and/or partners by offering them IPE Solution's version of the FLCC program. *Id.*. On information and belief, Mr. Breville targeted Plaintiff's customers by using Plaintiff's Proprietary Information he obtained while employed by Plaintiff. *Id.* In 2026, Mr. Breville, through IPE Solutions, began offering identical FLCC programs. *Id.* As of July 23, 2026, IPE Solutions' website references "FLCC by IPE Solutions" and "Foundational Liquid Cooling Certification" programs.[3] *Id.*; **Exhibit E**. Defendants' LinkedIn webpages also confirm IPE Solutions' offering identical FLCC programs, which consumers have already begun taking. *Id.*

On January 30, 2026, Mr. Breville filed a trademark application for "Foundational Liquid Cooling Certification" with the United States Patent and Trademark Office ("USPTO").[4] RJN, ¶ 1; **Exhibit A**. This application is currently still pending before the USPTO with Serial #99626029. *Id.* Mr. Breville is the listed owner and filed this application on an intent-to-use basis. *Id.*

On February 1, 2026, Mr. Breville filed a trademark application for "Liquid Cooling Certification" with the USPTO.[5] RJN, ¶ 2; **Exhibit B**. This application is currently still pending before the USPTO with Serial #99627391. *Id.* Mr. Breville is the listed owner and filed this second application on an in-use basis, with April 27, 2025 listed as the date of first use in commerce. *Id.*

---

[3] IPE SOLUTIONS, https://ipe-solutions.com/flcc/ (last visited July 23, 2026).

[4] Trademark Status & Document Retrieval ("TSDR"), Serial #99626029, USPTO, https://tsdr.uspto.gov/#caseNumber=99626029&caseSearchType=US_APPLICATION&caseType=DEFAULT&searchType=statusSearch (last visited August 15, 2026).

[5] TSDR, Serial #99627391, USPTO, https://tsdr.uspto.gov/#caseNumber=99627391&caseSearchType=US_APPLICATION&caseType=DEFAULT&searchType=statusSearch (last visited August 15, 2026).

On February 13, 2026, Defendant filed a trademark application for "FLCC" with the USPTO.[6] RJN, ¶ 3; **Exhibit C**. This application is currently still pending before the USPTO with Serial #99652700. *Id.* Mr. Breville is the listed owner and filed this application on an in-use basis, with April 28, 2025 listed as the date of first use in commerce. *Id.*

Therefore, by Mr. Breville's own sworn filings with the USPTO, Mr. Breville's claimed first use in commerce of the "Liquid Cooling Certification" trademark began while he was Plaintiff's employee. Mr. Breville's claimed first use in commerce was a mere two weeks before he suggested to Plaintiff's management that Byte Bridge should trademark FLCC "so that nobody else can copy it and put out their own." Byte Bridge never consented, expressly or impliedly, to Mr. Breville or IPE Solutions' trademarking or ownership of the trade names of "Foundational Liquid Cooling Certification", "Liquid Cooling Certification", or "FLCC".

### E. Informal Dispute Resolution and Ex Parte Notice

On June 1 and June 18, 2026, Plaintiff's counsel sent cease and desist demand letters to Mr. Breville. Tseng Decl., ¶ 2; **Exhibit A**. Mr. Breville responded on June 2 and June 22, 2026; he generally disputed Plaintiff's allegations and refused Plaintiff's demands. *Id.* at ¶ 3; **Exhibit A**. In response, Mr. Breville claimed his ownership of the FLCC concept predated his employment with Plaintiff. *Id.* Therefore, an actual dispute currently exists regarding the true ownership of the FLCC program and relating materials. On the date of this filing, Plaintiff's counsel provided Mr. Breville with notice of this Motion and copies of the filed Complaint and all supporting papers. *Id.* at ¶ 3.

## III. LEGAL STANDARD

The CUTSA defines trade secrets as all forms of financial, technical, economic, engineering, and other types of business information, "including a formula, pattern, compilation, program, device, method, technique, or process, that: (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) Is the subject of efforts that are reasonable under the

[6] TSDR, Serial #99652700, USPTO, https://tsdr.uspto.gov/#caseNumber=99652700&caseSearchType=US_APPLICATION&caseType=DEFAULT&searchType=statusSearch (last visited August 15, 2026).

circumstances to maintain its secrecy." Cal. Civ. Code § 3426.1(d); *See also* 18 U.S.C. § 1839(3) (same under DTSA, except also requiring that such information not be "readily ascertainable through proper means").

Both the DTSA and the CUTSA authorize injunctions to enjoin or prevent "any actual or threatened misappropriation" of trade secrets. 18 U.S.C. § 1836(b)(3)(A); Cal. Civ. Code § 3426.2(a). "The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction." *Comet Techs. USA Inc. v. Beuerman*, No. 18-CV- 01441-LHK, 2018 WL 1990226, at *2 (N.D. Cal. Mar. 15, 2018) (citing *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F.Supp. 1320, 1323 (N.D. Cal. 1995).

To obtain preliminary relief, Byte Bridge must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of relief; (3) that the balance of equities tips in its favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). In the Ninth Circuit, the first element may also be met where there are "'serious questions going to the merits' and a hardship balance that tips sharply towards the plaintiff [which] can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

## IV. <u>ARGUMENT</u>

### A. A TRO and Preliminary Injunction are Required to Enjoin Defendants From Using or Disseminating Plaintiff's Trade Secrets.

Misappropriation of a trade secret is defined both under federal and state law as, among other things: (a) "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means"; or (b) "disclosure or use of a trade secret of another without express or implied consent by a person who . . . used improper means to acquire knowledge of the trade secret[.]" 18 U.S.C. § 1839(5); *see also* Cal. Civ. Code § 3426.1(b) (same). "[I]mproper means" includes "theft," "misrepresentation," or "breach of a duty to maintain secrecy." 18 U.S.C. § 1839(6); *see also* Cal. Civ. Code § 3426.1(a) (same).

/ / /

**1. Plaintiff is Highly Likely to Succeed on the Merits of its Trade Secret Misappropriation and Related Claims.**

To prevail on "a claim for trade secret misappropriation under the Title 18 U.S.C. § 1836 and California Civil Code § 3426, a plaintiff must [prove] that: (1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff." *Bambu Franchising, LLC v. Nguyen*, 537 F.Supp.3d 1066, 1072 (N.D. Cal. 2021).

Here, Plaintiff owns the FLCC program, including its name and related program materials. The FLCC program is part of Plaintiff's Trade Secrets, as defined by 18 U.S.C. § 1836, *et seq*., because Plaintiff derives independent economic value from the FLCC program which is not generally known nor readily ascertainable through proper means by another person who can obtain economic value from the disclosure or use of the information. Cunanan Decl., ¶ 6. Plaintiff has taken reasonable measures to keep such information secret. *Id.* At all relevant times herein, Plaintiff's Trade Secrets were not and are not generally known to Plaintiff's competitors in the industry or to the general public. *Id.* Plaintiff developed and acquired its Trade Secrets and related pricing information, sales and business strategies, which all pertain to products used in or intended for use in interstate or foreign commerce. *Id.* Plaintiff's Trade Secrets are related to a product or service used in or intended for use in interstate or foreign commerce. *Id.* Defendant's misappropriation and related actions have proximately and actually damaged Plaintiff. Specifically, Plaintiff has suffered and continues to suffer damages in loss of goodwill, business opportunities, and a strong likelihood of confusion in the industry. *Id.* at ¶ 11. Plaintiff's damages are ongoing because Defendant continues to use the FLCC program and tradename to date. *Id.* Actual consumers have already begun taking Defendant's FLCC program. *Id.* at ¶ 9; **Exhibit E.** Defendant's disclosure and use of Plaintiff's Trade Secrets is without Plaintiff's express or implied consent. *Id.* at ¶ 10.

Plaintiff can prove that Defendant's taking and rebranding of the FLCC program as his own under the IPE label is actual misappropriation of Plaintiff's Trade Secrets. At the very least, Plaintiff can prove Defendant retained unauthorized copies of Plaintiff's Trade Secrets, which are confidential and proprietary. Plaintiff can prove this because at the time of Defendant's disclosure

or use of Plaintiff's Trade Secrets, Defendant knew or had reason to know that the knowledge of the Trade Secrets was acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit its use. By using April 27 and 28, 2025 as the date of first use in commerce, Mr. Breville's own USPTO filings admit he first used the FLCC program while he was Byte Bridge's employee. Cunanan Decl., **Exh. A**; RJN, ¶¶ 2–3, **Exhs. B–C**. Moreover, historical screenshots of Byte Bridge's FLCC webpage in 2025 coupled with the internal emails above show Mr. Breville helped develop the FLCC program for Byte Bridge.

Mr. Breville's actions implicate his new company, IPE Solutions. Under California law, an employer (IPE) may be held to be directly or vicariously liable for its employee's (Mr. Breville's) misappropriation of trade secrets of a prior employer (Byte Bridge). IPE may be held directly liable for Mr. Breville's misappropriation of Byte Bridge's trade secrets because it ratified that misconduct. "[A]n employer may be liable for an employee's act where the employer either authorized the tortious act or subsequently ratified an originally unauthorized tort […] The failure to discharge an employee who has committed misconduct may be evidence of ratification […]" *C.R. v. Tenet Healthcare Corp.*, 169 Cal.App.4th 1094, 1110 (2009). "The theory of ratification is generally applied where an employer fails to investigate or respond to charges that an employee committed an intentional tort." *Cisco Sys. v. Chung*, 462 F.Supp.3d 1024, 1057 (N.D. Cal. 2020) (citation omitted).

It cannot be disputed that IPE is aware of Mr. Breville's theft of Byte Bridge's trade secrets since its Founder and CEO, Mr. Breville, directly engaged in the subject activity. Cunanan Decl., ¶¶ 6–11. Therefore, because IPE is aware of its Founder and CEO's misappropriation of Byte Bridge's trade secrets, IPE has also misappropriated Byte Bridge's trade secrets that Mr. Breville stole under a theory of direct liability by ratification.

IPE may also be held vicariously liable for Mr. Breville's theft of Byte Bridge's trade secrets. "Under the doctrine of respondeat superior, an employer is vicariously liable for the torts of its employees committed within the scope of their employment." *Cisco Sys., Inc. v. Chung*, 462 F.Supp.3d 1024, 1056 (citation omitted). "Such liability extends to 'intentional torts, even if the employer has not authorized the employee to perform the tortious activity, so long as there is a

'causal nexus' between the activity and the employee's work.'" *Id.* at 1056–57. Courts consider conduct 'within the scope of employment when it is performed, at least in part, to benefit the employer, though the employer may forbid it.'" *Id*. at 1057. Given that IPE and Byte Bridge operate in the same industry, there is a reasonable inference that Mr. Breville misappropriated the information from Byte Bridge for the benefit of his new company, IPE, thereby establishing IPE's vicarious liability.

**2. Plaintiff Will Suffer Imminent and Irreparable Injury Unless the Court Issues Immediate Injunctive Relief.**

"California courts have presumed irreparable harm when proprietary information is misappropriated." *Albert's Organics, Inc. v. Holzman*, 445 F.Supp.3d 463, 474 (N.D. Cal. 2020) (citation omitted). "This is because such losses would be difficult to quantify in terms of economic value." *Henry Schein, Inc. v. Cook*, No. 16-cv-03166-JST, 2016 WL 3418537, at *8 (N.D. Cal. Jun. 22, 2016) (citing *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 841 (9th Cir. 2001) ("Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm")).

Defendants are using Plaintiff's FLCC program and its underlying confidential files to benefit themselves to Plaintiff's unfair detriment. Defendant's misappropriation and use of the FLCC program threatens Plaintiff with loss of prospective customers and goodwill. Therefore, Plaintiff stands to suffer injuries that cannot be repaired or quantified if the stolen trade secrets are further misappropriated. As noted above, Plaintiff invested time and money into developing and protecting the FLCC program. Cunanan Decl., ¶¶ 6–7. If a competitor accesses these files, it could benefit from insight into Plaintiff's marketing strategies, business plans, and non-public details about existing and prospective clients and employees with little time and minimal cost. Cunanan Decl., ¶ 6. There would be no way for Plaintiff to undo the loss of this competitive advantage. This is because "[a] trade secret once lost is, of course, lost forever." *WeRide Corp. v Kun Huang*, 379 F.Supp.3d 834, 853 (N.D. Cal. 2019) (citation omitted).

/ / /

/ / /

**3. Plaintiff's Injuries Substantially Outweigh Any Costs to Defendants for Complying With the Requested TRO and Preliminary Injunction.**

Courts regularly find that the balance of hardships tips in favor of a plaintiff seeking an injunction prohibiting a defendant from "do[ing] what the law already requires." *See*, *e.g.*, *WeRide Corp.*, *supra*, 379 F.Supp.3d at 854 ("It is no burden for them to do what the law already requires."); *Henry Schein, Inc. v. Cook*, 191 F.Supp.3d 1072, 1077 (agreeing the balance of hardships tips in favor of plaintiff seeking injunction when it would "do no more than require [d]efendant to comply with federal and state laws."); *Comet, supra*, 2018 WL 1990226, at *5 (finding TRO "will result in little meaningful hardship to Defendant" because "[t]he proprietary information at issue belongs to Plaintiff, not Defendant").

Here, Plaintiff's requested injunctive relief is narrowly tailored towards stopping Defendants from using the FLCC program and its underlying materials. If the Court finds Plaintiff has a likelihood of success in proving Defendants misappropriated Plaintiff's FLCC program, then the balance of hardships tips in Plaintiff's favor regarding injunctive relief aimed at stopping Defendants' use of Plaintiff's FLCC program.

**4. The Requested Relief Supports the Strong Public Interest in Favor of Protecting Trade Secrets.**

"The public interest is served by protecting trade secrets." *Bambu*, *supra*, 537 F.Supp.3d at 1080 (citing *Henry Schein*, *supra*, 191 F.Supp.3d at 1078); *see also WeRide*, *supra*, 379 F.Supp.3d at 854 ("Courts often find that the public has a strong interest in protecting intellectual property rights."). "Though California has a strong public policy in favor of vigorous competition, that interest 'yields to California's interest in protecting a company's trade secrets.'" *Id.* (citation omitted). "[A]n injunction specifically focused on preventing misuse of [] trade secrets to solicit [] customers would serve the policy of protecting trade secrets while simultaneously allowing lawful competition." *Pyro Spectaculars North, Inc. v. Souza*, 861 F.Supp.2d 1079, 1093 (E.D. Cal. 2012).

Here, the Court's narrowly-tailored injunctive relief order preventing Defendants from misusing Plaintiff's FLCC program and related trade secrets to solicit customers would serve both California's strong public policy of protecting intellectual property and allowing lawful competition.

**B. No Injunction Bond is Required.**

Federal Rule of Civil Procedure 65(c) "invests the district court 'with discretion as to the amount of security required, if any.'" *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (citations omitted). "The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Id.* Courts have not required the bond where "the injunction requires the parties to comply with their status quo contractual obligations[.]" *Commure, Inc v. Canopy Works, Inc.*, 792 F.Supp.3d 971, 982 (N.D. Cal. 2025).

No bond is needed here because, as explained above, Defendants will suffer no harm from complying with an injunction that simply prohibits them from misappropriating trade secrets that do not belong to him. Further, Plaintiff's requested injunctive relief simply seeks Defendants' compliance with their status quo contractual obligations—namely, keeping confidential Plaintiff's trade secrets and proprietary information. Plaintiff's requested injunctive relief does not preclude Defendants from working in their chosen occupations. Plaintiff only seeks to bar Defendants from using Plaintiff's FLCC program and related trade secrets. It follows that there is no likelihood of harm because the TRO would simply enjoin Defendants from doing something Defendants never had a right to do in the first place. Therefore, no bond is required because there is no realistic harm to Defendants if this Court grants Byte Bridge's request for injunctive relief.

**C. A Preservation Order is Necessary to Prevent the Destruction of Essential Evidence.**

The Court may issue an evidence preservation order beyond the ordinary duty to preserve evidence if there is "a significant concern that potentially relevant evidence will be destroyed causing harm to the opposing party." *Bright Sols. For Dyslexia, Inc. v. Doe 1*, No. 15-cv-01618-JSC, 2015 WL 5159125, at *3 (N.D. Cal. Sept. 1, 2015). That concern exists here for several reasons: first, Mr. Breville has already indicated his willingness to flout contractual confidentiality provisions he entered into with Plaintiff in his ECA. An evidence preservation order is necessary to prevent Mr. Breville's continued misconduct. Second, Mr. Breville made pre-litigation arguments that he independently developed the FLCC program outside of his Byte Bridge

employment. Tseng Decl., **Exh. A**. Such arguments are in direct contradiction to his USPTO filings indicating his first use in commerce of the FLCC tradename was during his Byte Bridge employment. RJN, ¶¶ 2–3, **Exhs. B–C**. Resolving the disputed origin and ownership of the FLCC program and tradename will require an examination of electronic devices and accounts that were under Mr. Breville's control since at least 2025. A preservation order is essential to preserve key evidence Plaintiff will need to prove its development and ownership of the FLCC program.

## V. CONCLUSION

For the foregoing reasons, Plaintiff Byte Bridge respectfully requests the Court grant this Ex Parte Motion for a Temporary Restraining Order, Order to Show Cause re a Preliminary Injunction, and Evidence Preservation Order as set forth in the accompanying Proposed Order.

Dated: August 19, 2026

Respectfully submitted,

DONAHUE FITZGERALD LLP
Attorneys at Law

By: /s/ Chancellor W. Tseng
John C. Kirke
Chancellor W. Tseng
Attorneys for Plaintiff,
BYTE BRIDGE, INC.