JOHN C. KIRKE, #175055
jkirke@donahue.com
CHANCELLOR W. TSENG, #322236
CTseng@donahue.com
DONAHUE FITZGERALD LLP
Attorneys at Law
1999 Harrison Street, 26th Floor
Oakland, California 94612-3520
Telephone: (510) 451-3300
Facsimile: (510) 451-1527

Attorneys for Plaintiff,
BYTE BRIDGE, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| BYTE BRIDGE, INC., a Nevada corporation,<br><br>Plaintiff,<br><br>v.<br><br>CURTIS H. BREVILLE, an individual; C.H. BREVILLE ENTERPRISES LLC, a Colorado limited liability company, dba IPE SOLUTIONS; and DOES 1-10, inclusive,<br><br>Defendants. | Case No.<br><br>**DECLARATION OF CHANCELLOR W. TSENG IN SUPPORT OF PLAINTIFF'S EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION** |

I, Chancellor W. Tseng, declare as follows:

1. I am an attorney at law duly admitted to practice before all the courts of the State of California. I am a Senior Counsel at Donahue Fitzgerald LLP, counsel of record herein for Plaintiff, Byte Bridge, Inc. ("Plaintiff" or "Byte Bridge"). I am over the age of 18, and I have personal knowledge of the facts set forth herein, except as otherwise stated. If called as a witness, I could and would competently testify to the matters stated herein. I make this declaration in support of Plaintiff's Ex Parte Motion for Temporary Restraining Order and Order to Show Cause Re: Preliminary Injunction.

2. On June 1 and June 18, 2026, my colleague John C. Kirke and I sent cease-and-desist demand letters on behalf of Byte Bridge to Defendant Curtis H. Breville ("Defendant" or "Mr.

Breville").

3. On June 2 and June 22, 2026, Mr. Breville responded to our letters. In his responses, Mr. Breville generally disputed Byte Bridge's allegations and refused our demands. Mr. Breville also claimed ownership of the Foundational Liquid Cooling Certification ("FLCC") concept predated his 2025 employment with Byte Bridge. Attached as **Exhibit A** is a true and correct copy of our June 1 and June 18, 2026 demand letters to Mr. Breville, with his June 2 and June 22, 2026 responses.

4. On the date of this filing, my office provided Mr. Breville with e-mail notice and filed copies of the accompanying Complaint and supporting papers for this Motion. My office will also arrange for a process server to personally serve Mr. Breville. My office will also notify Mr. Breville via email when the Court sets a hearing date and time for the Motion and Order to Show Cause.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on this 19th day of August, 2026, at Oakland, California.

/s/ Chancellor W. Tseng
Chancellor W. Tseng

# EXHIBIT A

DONAHUE FITZGERALD ATTORNEYS

JOHN C. KIRKE
jkirke@donahue.com

1999 Harrison Street, 26th Floor, Oakland, CA 94612-3520
tel: (510) 451-3300 fax: (510) 451-1527
www.donahue.com

June 1, 2026

**VIA E-MAIL AND U.S. MAIL**

Curtis H. Breville
13455 Kearney Street
Brighton, Colorado 80602
cbreville@gmail.com

**Re: Byte Bridge, Inc.: Cease and Desist Demand**

Dear Mr. Breville:

Our office has been retained to represent Byte Bridge, Inc. ("Byte Bridge"). Byte Bridge has informed us that it employed you, Curtis Breville, from February 3 to December 17, 2025, initially as Global Pre-Sales Engineering Manager – Systems & Cooling, and eventually as Vice President of Data Center Cooling Programs & GTM.

As Byte Bridge's former Vice President, you came into contact with significant Byte Bridge proprietary and confidential company information, including but not limited to: Byte Bridge's customer and client lists; Byte Bridge's company property and materials; and other related information that consists of Byte Bridge's trade secrets (collectively, "Proprietary Information").

**Employment Agreement.** At the inception of your employment with Byte Bridge, you signed an Employment Agreement dated February 3, 2025. In your Employment Agreement, you specifically acknowledged that any "information with commercial value in the business in which Byte Bridge is engaged" is Byte Bridge's "Proprietary Information." Emp. Ag. § 2.1. Byte Bridge's Proprietary Information definition, which was given by way of illustration only, specifically included "trade secrets, ideas, processes…know-how…designs, innovations, techniques, business development strategies…" and "customer and supplier lists." Emp. Ag. § 2.2. You acknowledged that Byte Bridge was and is the sole owner of all Byte Bridge Proprietary Information, including its trade secrets and related intellectual property rights. Emp. Ag. § 2.3. You agreed to "keep all Proprietary Information confidential and not to disclose, reproduce, or use such information without prior written consent from Byte Bridge." Emp. Ag. § 2.4. Further, you assigned and transferred to Byte Bridge any and all of your right, title, and interest acquired in the Proprietary Information and related intellectual property rights during your employment with Byte Bridge. Emp. Ag. § 2.5.

Within the same Employment Agreement, you agreed to give Byte Bridge prompt written notice of your acquisition or creation of any Proprietary Information, and to execute documents to perfect Byte Bridge's ownership of such information. Emp. Ag. § 2.6. You also agreed to return all Proprietary Information you created or possessed to Byte Bridge upon employment termination. Emp. Ag. § 2.7. Finally, you were given the opportunity to disclose and claim any prior inventions belonging to you before your Byte Bridge employment. Emp. Ag. § 4. You did not disclose any such inventions. Therefore, you do not have any claim of ownership regarding Byte Bridge's Proprietary Information.

**Severance Agreement.** Upon termination of your employment with Byte Bridge, you signed a Severance Agreement dated December 17, 2025. In your Severance Agreement, you agreed not to solicit any Byte Bridge client, customer, or employee for a period of twelve (12) months. Sev. Ag. § 4. You also agreed to keep confidential all of Byte Bridge's trade secrets and Proprietary Information, which included "non-public business strategies, financial information, pricing, customer data, and internal operations." Sev. Ag. § 5.

**Allegations: Trade Secret Theft; Trademark and Copyright Infringement; Unlawful Solicitation of Clients**

It has come to Byte Bridge's attention that you have kept and/or taken Byte Bridge's Proprietary Information, including but not limited to Byte Bridge's customer information, client lists, pricing materials, business development strategies, know-how, ideas, processes, designs, innovations, techniques, and other trade secrets.

Indeed, you tried to access Byte Bridge's Proprietary Information when you attempted to log into Byte Bridge's SharePoint on May 10, 2026, at a known IP address associated with you. Byte Bridge also alleges you are improperly using its Proprietary Information to solicit its customers and clients for your new company, IPE Solutions.

We have reviewed IPE Solutions' "Liquid Cooling 101" online self-paced liquid cooling training portal. It is Byte Bridge's position that Byte Bridge developed this "Liquid Cooling 101" training and therefore it is Byte Bridge's Proprietary Information. In fact, you were copied on a May 28, 2025, email, which stated that Byte Bridge was going to file a trademark application for *ByteBridge Foundational Liquid Cooling Certification (FLCC)* Program.

You are infringing on Byte Bridge's registered trademark and related common law intellectual property rights. Such infringement may include filing and prosecuting infringing trademark applications before the United State Patents and Trademarks Office. At all times relevant, Byte Bridge is the sole and first in time owner of its registered trademark, trade names, and related common law intellectual property rights.

It is also Byte Bridge's position that your actions were taken personally and on behalf of your new company, IPE Solutions, which appears to be a direct competitor to Byte Bridge. Please be advised that any and all knowing development of IPE Solutions' technologies using Byte Bridge's Proprietary Information will subject IPE Solutions to civil liability as well.

**<u>Legal Authority Supporting Demands to Cease and Desist; Return and Destroy Proprietary Information</u>**

**Trade Secret Theft.** At all times during and after your employment, Byte Bridge has and continues to treat its information and materials as its confidential and proprietary trade secrets. Byte Bridge is entitled to legal trade secret protections under state and federal law, including but not limited to the California Uniform Trade Secrets Act (CUTSA) Civil Code § 3426, *et seq*.; the Defend Trade Secrets Act (DTSA) 18 U.S.C. § 1836, *et seq*.; and the Economic Espionage Act (EEA) 18 U.S.C. § 1831, *et seq*. Please be advised that the EEA makes it a federal crime to misappropriate trade secrets for economic benefit. "Misappropriation" is defined as "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" or "disclosure or use of a trade secret of another without express or implied consent" under circumstances giving rise to a duty to maintain secrecy." Damages injunctive relief, damages for actual loss or unjust enrichment, reasonable royalties, and punitive damages up to twice the award for willful and malicious misappropriation. Your retention and use of Byte Bridge's Proprietary Information, including but not limited to its client lists and trade secrets, constitute willful and malicious misappropriation.

**Trademark and Copyright Infringement.** Your Employment Agreement specifically references the United States Copyright Act under 17 U.S.C. §§ 101–810 and incorporates all applicable federal copyright protections for "works made for hire" you created during your employment at Byte Bridge. Further, the United States Lanham Act prohibits unauthorized use of "any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services" where such use "is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114. The Lanham Act also provides a cause of action for trademark dilution, false designation of origin, and unfair competition, covering both registered and unregistered marks, prohibiting use of "any word, term, name, symbol, or device" that "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association" or that "misrepresents the nature, characteristics, qualities, or geographic origin" of goods or services. 15 U.S.C. § 1125. Your attempts to register trademarks and use of confusingly similar trade names to Byte Bridge infringes on Byte Bridge's registered mark and common law rights.

**Unfair Competition Law.** Additionally, your creation of IPE Solutions and solicitation of Byte Bridge's customers and clients using Byte Bridge's Proprietary Information is unfair competition under California's Business and Professions Code § 17200, *et seq*. Any further actions you have taken to suggest or conflate IPE Solutions having any type of relationship with Byte Bridge is a further violation of this law and constitutes an unfair, fraudulent, and deceptive business practice.

**Breach of Employment and Severance Agreements.** In addition to the statutory violations outlined above, your actions have constituted breach of the executed Employment and Severance Agreements. Byte Bridge's statutory claims will be supplemented by traditional breach of contract claims.

**At this time, we demand that you and IPE Solutions immediately:**

**1. Cease and desist all use of Byte Bridge's Proprietary Information, including but not limited to Byte Bridge's customer and client lists, and the "Liquid Cooling 101" online self-paced liquid cooling training portal;**

**2. Cease and desist all contact with Byte Bridge's former and current customers and clients you came into contact with during your employment at Byte Bridge;**

**3. Cease and desist all infringing use of Byte Bridge's copyrights, trademarks, and trade names,**

**Additionally, we demand that you and IPE Solutions do the following:**

**4. Provide a list of all Byte Bridge Proprietary Information you have kept;**

**5. Provide a list of all Byte Bridge customers, clients, and employees you have contacted since your employment at Byte Bridge;**

**6. Return and destroy all copies of Byte Bridge's Proprietary Information in any and all mediums;**

**7. Certify in writing to my office within 3 days that you have returned and destroyed all copies of Byte Bridge's Proprietary Information in any and all mediums;**

**8. Withdraw with prejudice any and all infringing trademark applications with the United States Patents and Trademarks Office with confirmation of withdrawal to my office; and**

**9. Compensate Byte Bridge by paying $50,000.00 in damages and $10,000.00 in reasonable attorneys' fees and costs associated with enforcing this cease and desist demand letter.**

If you fail to comply with our demand, we will exercise and enforce all of Byte Bridge's legal rights and protect its Proprietary Information, which will include filing a federal lawsuit seeking compensatory and punitive damages, injunctive relief, and recovering attorneys' fees and costs incurred. **Please notify me in writing by June 8, 2026, if you intend to comply with this cease and desist demand.** We reserve all rights and do not waive any rights with this letter.

Sincerely,

John C. Kirke

JCK:cwt/pjt

DONAHUE FITZGERALD ATTORNEYS

JOHN C. KIRKE
jkirke@donahue.com

1999 Harrison Street, 26th Floor, Oakland, CA 94612-3520
tel: (510) 451-3300 fax: (510) 451-1527
www.donahue.com

June 18, 2026

**VIA E-MAIL AND U.S. MAIL**

Curtis H. Breville
13455 Kearney Street
Brighton, Colorado 80602
cbreville@gmail.com

**Re: Byte Bridge, Inc.: Cease and Desist Demand (Second)**

Dear Mr. Breville:

We reviewed your June 2, 2026 response to our June 1, 2026 cease and desist demand on behalf of Byte Bridge, Inc. ("Byte Bridge"). Your response alleged the following:

**1. "ByteBridge did not hire me to serve as a trainer nor to build an educational institution. I was hired to help establish and grow ByteBridge's liquid cooling reseller, services, and go-to-market organization."**

Byte Bridge agrees you were not hired to serve as a trainer. However, while in Byte Bridge's employ, you helped Byte Bridge develop this training program to generate customer leads. The fact remains that you did not disclose this training program before joining Byte Bridge, so anything you created or helped develop during your time at Byte Bridge is Byte Bridge's Proprietary Information. Any attempts to rebuild or rebrand this training program as your own, and to use it to solicit Byte Bridge's customers, violates the previously-cited authorities and agreements.

**2. "I discussed those concepts with Marvin Cunanan prior to my employment with ByteBridge, including discussions with him and other ByteBridge leadership at and around OCP Summit in 2024 when I was working at CoolIT."**

Mr. Cunanan disputes you discussed any training program concepts prior to your employment with Byte Bridge. It is Byte Bridge's position that the training program was discussed and developed internally at Byte Bridge. Byte Bridge then assigned this training program to you to help lead while you were employed at the company.

///

///

**3. "In February 2026 I proactively contacted Marvin Cunanan and ByteBridge human resource leadership to disclose my trademark filings for Foundational Liquid Cooling Certification, Liquid Cooling Certification, and FLCC, explain my position regarding ownership, and propose potential licensing and collaboration opportunities. At that time, I also expressed my intention to continue recommending ByteBridge as a qualified provider of liquid cooling products and services."**

Mr. Cunanan and Byte Bridge categorically deny this claim as false. Please produce all evidence supporting this claim.

**4. "The concept of a structured liquid cooling certification framework was not created by ByteBridge. I conceived the foundational certification concept, framework, and branding before joining ByteBridge while employed at CoolIT Systems in 2024…While ByteBridge subsequently marketed and hosted my training sessions utilizing the FLCC name during my employment, the underlying educational framework, information taught, curriculum architecture, certification model, and instructional approach originated from my own independent work and experience."**

Please produce all evidence you have supporting your claim that you developed the training program framework at CoolIT Systems and/or during your independent work.

***

In addition to the above, it is Byte Bridge's position that you were well aware of Byte Bridge's July 2025 trademark filings relating to the training course. You knew about Byte Bridge's ownership claim over these training courses since at least July 2025 when you were still employed at Byte Bridge. Therefore, your attempts to file these training course related trademarks after your employment ended were made in bad faith.

Importantly, you did not have any conversations with Mr. Cunanan or Alisha Tominaga regarding you taking the name and ownership of the training course with you after leaving Byte Bridge's employ. If you have any evidence that you did, please produce it.

**Accordingly, we renew our cease and desist demand that you and IPE Solutions immediately:**

**1. Cease and desist all use of Byte Bridge's Proprietary Information, including but not limited to Byte Bridge's customer and client lists, and the "Liquid Cooling 101" online self-paced liquid cooling training portal;**

**2. Cease and desist all contact with Byte Bridge's former and current customers and clients you came into contact with during your employment at Byte Bridge;**

**3. Cease and desist all infringing use of Byte Bridge's copyrights, trademarks, and trade names,**

**Additionally, we demand that you and IPE Solutions do the following:**

**4. Provide a list of all Byte Bridge Proprietary Information you have kept;**

**5. Provide a list of all Byte Bridge customers, clients, and employees you have contacted since your employment at Byte Bridge;**

**6. Return and destroy all copies of Byte Bridge's Proprietary Information in any and all mediums;**

**7. Certify in writing to my office within 3 days that you have returned and destroyed all copies of Byte Bridge's Proprietary Information in any and all mediums;**

**8. Withdraw with prejudice any and all infringing trademark applications with the United States Patents and Trademarks Office with confirmation of withdrawal to my office; and**

**9. Compensate Byte Bridge by paying $50,000.00 in damages and $10,000.00 in reasonable attorneys' fees and costs associated with enforcing this cease and desist demand letter.**

If you fail to comply with our renewed demand, we will exercise and enforce all of Byte Bridge's legal rights and protect its Proprietary Information, which will include filing a federal lawsuit seeking compensatory and punitive damages, injunctive relief, and recovering attorneys' fees and costs incurred. **Please notify me in writing by June 22, 2026, if you intend to comply with this renewed cease and desist demand.** We reserve all rights and do not waive any rights with this letter.

Sincerely,

John C. Kirke

JCK:cwt/pjt

4913-6198-6740.1

**Chancellor W. Tseng**

| | |
|---|---|
| **From:** | John C. Kirke |
| **Sent:** | Monday, June 22, 2026 10:56 AM |
| **To:** | Chancellor W. Tseng |
| **Subject:** | Fw: Byte Bridge, Inc. v. Breville |
| **Attachments:** | Email to ByteBridge 2-16-26.pdf |

Get Outlook for iOS

---

**From:** Curtis Breville <Curtis@ipe-solutions.com>
**Sent:** Monday, June 22, 2026 10:54 AM
**To:** John C. Kirke <jkirke@donahue.com>
**Cc:** Pam Trempel <PTrempel@donahue.com>
**Subject:** Re: Byte Bridge, Inc. v. Breville

Mr. Kirke,

I am in receipt of your June 18, 2026 correspondence.

At the outset, I note that despite now sending two cease and desist letters and demanding $50,000 in alleged damages plus $10,000 in attorneys' fees, ByteBridge still has not identified with specificity:

• The particular trade secret allegedly misappropriated;
• The particular confidential information allegedly retained or used;
• The specific copyrighted work allegedly infringed;
• The specific customer allegedly solicited improperly;
• The specific conduct allegedly causing damage to ByteBridge; or
• The factual basis or calculation supporting ByteBridge's monetary demand.

Instead, ByteBridge continues to make broad accusations while failing to identify any actual wrongful conduct, any specific proprietary information allegedly used, or any measurable loss allegedly suffered.

Your letter states that Mr. Cunanan and ByteBridge "categorically deny" my claim that I disclosed my trademark filings and ownership position regarding FLCC. Attached is a true and correct copy of my February 16, 2026 email to Marvin Cunanan and Alisha Tominaga entitled "Alignment on FLCC™ Branding and Usage."

That email speaks for itself.

As the attached email demonstrates, I openly disclosed my trademark filings, my ownership position regarding FLCC, my desire to maintain quality standards associated with the certification program, and my willingness to pursue licensing and collaboration opportunities with ByteBridge. These

communications occurred months before your cease and desist demands and are wholly inconsistent with any suggestion that I acted secretly, deceptively, or in bad faith.

With respect to ByteBridge's repeated assertions regarding ownership of FLCC and related marks, I respectfully disagree. However, ownership disputes regarding trademark rights are not resolved through unsupported accusations in demand letters. The United States Patent and Trademark Office provides established procedures through which parties may oppose, challenge, or otherwise contest trademark applications if they believe they possess superior rights.

To date, ByteBridge has chosen not to provide evidence supporting its allegations and has instead continued issuing demands unsupported by specific facts.

I further reject the suggestion that ByteBridge's July 2025 statement of intent to trademark the training establishes ownership of it or demonstrate bad faith on my part. The claim to want a trademark does not establish ownership of underlying intellectual property, authorship, priority of creation, or exclusive rights as a matter of law. Nor does my awareness of such intent constitute evidence of wrongdoing.

As I stated previously, I have not retained, used, disclosed, or relied upon ByteBridge confidential information, trade secrets, customer lists, pricing information, or proprietary business materials in connection with my current business activities. I likewise deny any improper solicitation of customers or infringement of any valid ByteBridge intellectual property rights.

I will not comply with ByteBridge's demands to withdraw my trademark applications, pay unsupported monetary claims, cease lawful business activities, nor provide information to which ByteBridge has demonstrated no entitlement.

Should ByteBridge elect to pursue litigation, I am fully prepared to defend myself, my intellectual property rights, my professional reputation, and my business. I am confident that the relevant facts, documents, communications, and testimony will demonstrate the merits of my position.

If ByteBridge wishes to engage in a constructive discussion supported by specific facts and evidence, I remain willing to do so. Otherwise, I respectfully request that future correspondence identify with particularity the alleged misconduct, proprietary information, damages, and legal basis supporting ByteBridge's claims.

Sincerely,

Curtis



IPE Solutions

Curtis Breville, Dr. Mgt.

Founder / CEO
curtis@ipe-solutions.com
m. +1 (720) 919-0706
https://www.linkedin.com/in/cbreville/

Get Liquid Cooling Certified HERE

On Jun 18, 2026, at 8:28 AM, John C. Kirke <jkirke@donahue.com> wrote:

Mr. Breville,
Please see attached correspondence.
John Kirke

---

**From:** Curtis Breville <Curtis@ipe-solutions.com>
**Sent:** Tuesday, June 2, 2026 12:39 PM
**To:** Pam Trempel <PTrempel@donahue.com>
**Cc:** John C. Kirke <jkirke@donahue.com>
**Subject:** Re: Byte Bridge, Inc.: Cease and Desist Demand

Mr. Kirke,

Thank you for your June 1, 2026 correspondence.

I take allegations regarding confidential information, intellectual property, and contractual obligations seriously. Accordingly, before this matter escalates further, I would like to make a final good-faith effort to address what I believe may be several misunderstandings regarding my activities since departing Byte Bridge, Inc ("ByteBridge").

First and foremost, I have not retained, used, disclosed, or relied upon ByteBridge confidential information, customer lists, pricing information, internal business strategies, or trade secrets in connection with my current business activities.

Likewise, I have not attempted to solicit customers using any confidential information obtained during my employment, nor have I used ByteBridge proprietary materials to develop my current educational offerings.

The central issue appears to concern the Foundational Liquid Cooling Certification (FLCC), Liquid Cooling Certification, and the recently launched Liquid Cooling 101 online self-paced training course.

For clarity, ByteBridge did not hire me to serve as a trainer nor to build an educational institution. I was hired to help establish and grow ByteBridge's liquid cooling reseller, services, and go-to-market organization. As part of that effort, I brought with me what I had already created; a training program to demonstrate expertise, educate the market, establish credibility, and support business development opportunities in a rapidly emerging industry.

The concept of a structured liquid cooling certification framework was not created by ByteBridge. I conceived the foundational certification concept, framework, and branding before joining ByteBridge while employed at CoolIT Systems in 2024. I discussed those concepts with Marvin Cunanan prior to my employment with ByteBridge, including discussions with him and other ByteBridge leadership at and around OCP Summit in 2024 when I was working at CoolIT.

While ByteBridge subsequently marketed and hosted my training sessions utilizing the FLCC name during my employment, the underlying educational framework, information taught, curriculum architecture, certification model, and instructional approach originated from my own independent work and experience.

Importantly, the current Liquid Cooling 101 self-paced course was independently developed following my departure from ByteBridge. It was not copied from ByteBridge materials nor does it contain ByteBridge confidential information. Rather, it was created using publicly available sources, industry knowledge, and expertise accumulated throughout my career, including knowledge that predates my employment with ByteBridge.

I would also note that in February 2026 I proactively contacted Marvin Cunanan and ByteBridge human resource leadership to disclose my trademark filings for Foundational Liquid Cooling Certification, Liquid Cooling Certification, and FLCC, explain my position regarding ownership, and propose potential licensing and collaboration opportunities. At that time, I also expressed my intention to continue recommending ByteBridge as a qualified provider of liquid cooling products and services.

Since my departure, I have consistently acted in a manner intended to support, not harm, ByteBridge. I have publicly and privately spoken positively about the company, recommended ByteBridge when appropriate, and sought opportunities for constructive collaboration rather than competition. An example of this was at the AFCOM industry networking event on March 12th where I sat on a panel and shared that anybody looking for liquid cooling services should contact ByteBridge while three members of ByteBridge’s sales team were in the audience. I have emails and text messages I have sent for ByteBridge business development purposes of which I had no financial benefit to gain but wished to help an end user reaching out for a solution.

Regarding the SharePoint allegation referenced in your letter, the login attempt in question resulted from an inadvertent browser autofill error while attempting to access a different SharePoint environment. I did not access ByteBridge systems, retrieve any information, download any files, or obtain any confidential material. The event was accidental and did not result in access to ByteBridge information.

I also respectfully reject ByteBridge's demand for payment of $50,000 in purported damages and $10,000 in attorneys' fees. Your letter provides no explanation as to how those amounts were calculated, what losses ByteBridge allegedly incurred, or how any such losses are attributable to my conduct. Based on the information presently available to me, I am aware of no factual or legal basis supporting the monetary demand, and I therefore decline it in its entirety.

Because the allegations contained in your letter are serious, I respectfully request that ByteBridge identify with specificity:

1. The particular trade secrets or confidential information it believes I have retained or used;
2. The specific copyrighted materials it contends have been infringed;
3. The trademark registrations or ownership rights it believes are being violated;
4. The specific customers or clients it believes were improperly solicited; and
5. The factual basis supporting the monetary demand contained in your letter.

While I remain willing to engage in a constructive dialogue to resolve any legitimate concerns, I also reserve all rights and remedies available to me with respect to my intellectual property, professional reputation, business relationships, and lawful business activities. I respectfully reject allegations that I have engaged in wrongdoing where none has occurred.

I have worked diligently to build my reputation over the course of several decades in the technology industry and take seriously any statements or actions that may adversely affect my professional standing, business relationships, intellectual property rights, or ability to earn a living. For that reason, I trust that any future assertions regarding my conduct will be supported by specific facts and evidence.

I hope we can resolve these issues professionally and constructively.

Sincerely,

Dr. Curtis H. Breville
President & CEO
IPE Solutions

<image001.png>

Curtis Breville, Dr. Mgt.
Founder / CEO
curtis@ipe-solutions.com
m. +1 (720) 919-0706

www.ipe-solutions.com

On Jun 1, 2026, at 1:19 PM, Pam Trempel <PTrempel@donahue.com> wrote:

Please see attached correspondence from John C. Kirke, Esq. regarding that above-referenced matter and direct any questions or comments you may have regarding the cease and desist demand to Mr. Kirke. Thank you.

Pam Trempel
Secretary to John C. Kirke, Esq.

<image001.png>
*Representing Innovators for Over 140 Years*

**Donahue Fitzgerald LLP**
**1999 Harrison Street, 26th Floor, Oakland, CA 94612**
**ptrempel@donahue.com (510) 451-3300 (w)| (510) 451-1526 (f)**
Important: This email may contain confidential or privileged information. If it is not meant for you, please do not retain, read, copy, or disseminate any part of it, and please immediately notify us. Thank you.

<(2026.06.01) [JCK] Breville Cease and Desist Letter.pdf>

<0350_001.pdf>