# Exhibit A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:26-cv-4497

CURTIS H. BREVILLE, and
C.H. BREVILLE ENTERPRISES LLC d/b/a IPE SOLUTIONS,

Petitioners,

v.

BYTE BRIDGE, INC., a California corporation,

Respondent.

---

**PETITION TO COMPEL ARBITRATION**

---

Petitioners Curtis H. Breville and C.H. Breville Enterprises LLC d/b/a IPE Solutions, through their undersigned counsel, file this petition pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, to compel Respondent Byte Bridge, Inc. to resolve its claims against Petitioners through arbitration in Colorado before the American Arbitration Association, consistent with the terms of the Parties' Employment and Confidentiality Agreement. In support of their Petition, Petitioners state as follows:

**INTRODUCTION**

1. On August 19, 2026, Respondent Byte Bridge filed a lawsuit in the United States District Court for the Northern District of California against its former employee, Dr. Curtis Breville, and his company, IPE Solutions, captioned *Byte Bridge, Inc. v. Breville et. al.*, Case No. 3:26-cv-08627-WHO (N.D. Cal.) (the "California Action"). A copy of the Complaint in the California Action is attached hereto as **Exhibit 1**. *See id.* (ECF No. 1 at 1–18, Compl. ("Cal. Compl.").)

2. Each of the eight causes of action for legal remedies asserted in the California

Action arise out of or relate to Dr. Breville's employment with Byte Bridge, which was governed by an Employment and Confidentiality Agreement ("Employment Agreement"), attached hereto as **Exhibit 2**. *See also* Cal. Action (ECF No. 1 at 19–34.) The Employment Agreement required that, as a condition of Dr. Breville's employment, any dispute or controversy arising out of or relating to the Employment Agreement must "be settled by arbitration, to be held where Employee is domiciled and/or is providing services for Byte Bridge in accordance with the employment dispute resolution rules then in effect of the American Arbitration Association by a single arbitrator." (Emp't Agreement § 12.1.)

3. Petitioners seek an order from this Court under the Section 4 of the FAA compelling Byte Bridge to arbitrate its claims against Petitioners in accordance with the terms of the Employment Agreement.

## The Parties

4. Petitioner Curtis H. Breville is an individual residing in Adams County, Colorado. Dr. Breville was employed by Byte Bridge from February 3, 2025, to December 17, 2025, initially as Byte Bridge's Global Pre-Sales Engineering Manager – Systems and Cooling and then as its Vice President of Data Center Cooling Programs and GTM.

5. Petitioner C.H. Breville Enterprises d/b/a IPE Solutions is a limited liability company organized under the laws of Colorado. Dr. Breville is the owner and registered agent of IPE Solutions.

6. Upon information and belief, Respondent Byte Bridge, Inc. is a Nevada corporation with its principal place of business in Hayward, Alameda County, California. (*See* Cal. Compl. ¶ 3.)

## Jurisdiction and Venue

7. This Court has jurisdiction over this Petition pursuant to 9 U.S.C. § 4, which

provides: "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28 . . . for an order directing such arbitration proceed in the manner provided for in such agreement." As set forth below, this Court would otherwise have jurisdiction over the arbitrable claims under Title 28.

8. Section 4 of the FAA allows a petitioner to seek an order compelling arbitration so long as there is "an independent jurisdictional basis" for the Court to exercise jurisdiction over the parties. *Hall Street Assocs. LLC v. Mattel, Inc.*, 552 U.S. 576, 581–82 (2008).

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), as this is a civil action between Respondent, a Nevada and California citizen for diversity jurisdiction purposes (*see* Cal. Compl. ¶ 8), and Petitioners, Colorado citizens—and the arbitrable claims' amount in controversy exceeds $75,000.

10. This Court also has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over the arbitrable claims brought under the federal Defend Trade Secrets Act and the Lanham Act. As noted by Byte Bridge, "[t]he gravamen of [Byte Bridge's] Complaint and claims arise under the Defend Trade Secrets Act at 18 U.S.C. § 1836." (Cal. Compl. ¶ 7.)

11. The Court has supplemental jurisdiction over the remaining arbitrable claims not falling within its original jurisdiction, pursuant to 28 U.S.C. § 1367. All of the arbitrable claims arise from Byte Bridge's allegations that Petitioners misappropriated Byte Bridge's trade secrets and infringed Byte Bridge's intellectual property. These claims all derive from a common nucleus of operative fact and form the same case or controversy. *See Price v. Wolford*, 608 F.3d 698, 702–03 (10th Cir. 2010).

12. The Court has personal jurisdiction over all Parties. Petitioners both reside in Colorado. While Byte Bridge is not a Colorado resident, this Court has specific personal jurisdiction over Byte Bridge because it agreed that the Employment Agreement and any arbitrable claims arising therefrom would be governed by the laws of and settled by arbitration to be held in the state "where [Dr. Breville] is domiciled and/or is providing services for Byte Bridge." (Emp't Agreement §§ 11, 12.1.) Dr. Breville is domiciled in Colorado and provided services for Byte Bridge in Colorado.

13. Venue is proper in this judicial district because, pursuant to 9 U.S.C. § 4, a party should bring a petition to compel arbitration in the District where the parties agreed to arbitrate any disputes between them. *See Ansari v. Qwest Commc'ns Corp.*, 414 F.3d 1214, 1220 (10th Cir. 2005). As noted above, the Parties agreed to arbitrate Byte Bridge's claims in Colorado, as that is where Dr. Breville resides and where he provided services for Byte Bridge. (Emp't Agreement § 12.1.)

## Factual Allegations

### The Parties' Employment Relationship and Agreement to Arbitrate

14. Byte Bridge is an IT solutions provider.

15. Dr. Breville was employed by Byte Bridge from February 2025 through December 17, 2025, first as the Global Pre-Sales Engineering Manager – Systems and Cooling and eventually as the Vice President of Data Center Cooling Programs and GTM.

16. At the start of Dr. Breville's employment, both he and Byte Bridge reviewed and signed the Employment Agreement.

17. Section 11 of the Employment Agreement states:

> This Agreement shall be governed by, construed, and enforced in accordance with

> the laws of the state where Employee is domiciled and/or is providing services for Byte Bridge (regardless of that jurisdiction or any other jurisdiction's choice of law principles).

(Emp't Agreement § 11.)

18. Section 12.1 of the Employment Agreement states:

> In the event that any dispute or controversy arises out of, or relates to this Agreement, the dispute or controversy shall be settled by arbitration, to be held where Employee is domiciled and/or is providing services for Byte Bridge in accordance with the employment dispute resolution rules then in effect of the American Arbitration Association by a single arbitrator. . . . Employee understands that each party's consent to resolve disputes by arbitration, as opposed to the judicial system is consideration for the other party's promise. Employee further understands that he or she has been offered employment by[ ]Byte Bridge in consideration of Employee's promises to arbitrate disputes.

(*Id.* § 12.1.)

19. By stating that such disputes or controversies shall be settled by arbitration "in accordance with the employment dispute resolution rules then in effect of the American Arbitration Association," Byte Bridge and Dr. Breville incorporated the American Arbitration Association's Employment/Workplace Arbitration Rules and Mediation Procedures (the "AAA Employment Rules") into their arbitration agreement.[1] *See* AAA Emp't Rules, R-1(a) ("The parties shall be deemed to have made these Rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association (hereinafter "AAA") under its *Employment/Workplace Arbitration Rules and Mediation Procedures* or for arbitration by the AAA of an employment dispute without specifying particular rules.").

20. Similarly, the Employment Agreement's incorporation of the AAA Employment Rules also reflects an agreement that "[t]he arbitrator shall have the power to rule on their own

---

[1] *Available at* https://www.adr.org/media/aktbpg2y/2026_employment-arbitration-rules-and-mediation-procedures.pdf.

jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or the arbitrability of any claim or counterclaim." AAA Emp't Rules, R-7(b).

21. Section 10 of the Employment Agreement provides a narrow exception to the arbitration clause that allows Byte Bridge to seek injunctive relief from the courts in just one limited circumstance:

> Employee specifically acknowledges that a violation of Section 2 [Proprietary Information Creation], 3 [Client Defined], 4 [Prior Inventions], 5 [Conflicting Obligations], and statements 6 [Covenant Not to Compete and Not to Interfere], 7 [Covenant Not to Solicit], or 8 [Covenant of Confidentiality] of this Agreement could cause irreparable injury to[ ]Byte Bridge and its business or property. Employee, therefore, agrees that in the event of his or her breach of any of the terms and conditions of Section 2, 3, 4, 5, and statements 6, 7, or 8 of this Agreement, Byte Bridge shall be entitled, if it so elects, to institute and prosecute proceedings in any court of competent jurisdiction in equity to enjoin him or her from further violation of such provisions. The remedies provided herein shall be cumulative and in addition to any and all other remedies which either party may have at law or in equity. Remedies at law to be sought in accordance with Section 11 and 12 below.

(Emp't Agreement § 10.)

22. At the end of Dr. Breville's employment, he reviewed and signed a Severance Agreement and General Release (the "Severance Agreement") dated December 17, 2025, a copy of which is attached hereto as **Exhibit 3**. *See also* Cal. Action (ECF No. 1 at 35–39.)

23. In January 2026, after Byte Bridge had terminated his employment, Dr. Breville founded IPE Solutions. Dr. Breville is the owner and CEO of IPE Solutions.

**Byte Bridge's Arbitrable Claims Against Petitioners**

24. On August 19, 2026, Byte Bridge filed the California Action against Petitioners. The California Action asserts claims for trade secret misappropriation against all Defendants under the federal Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*, and the California Uniform Trade Secrets Act, Cal. Civ. Code § 3426 *et seq.* (Counts I and II, respectively), false designation of origin

under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, against all Defendants (Count III), breach of fiduciary duty and the duty of loyalty against Dr. Breville (Count IV), unfair competition under Cal. Bus. & Prof. Code § 17200 *et seq.*, against all Defendants (Count V), breach of contract against Dr. Breville (Count VI), intentional interference with contract and prospective economic relations against all Defendants (Count VII), and negligent interference with contract and prospective economic relations against all Defendants (Count VIII). (Cal. Compl. ¶¶ 28–76.)

25. Byte Bridge's request for injunctive relief in his sixth cause of action against Breville for Breach of Contract (*id.* ¶¶ 61–67) is the only claim asserted in the California Action that falls within the narrow exception to the arbitration clause defined in Section 10 of the Employment Agreement. Byte Bridge's claim for remedies at law in Count VI remain within the scope of the arbitration clause. Additionally, Byte Bridge's other claims for injunctive relief remain subject to the arbitration clause because they do not seek to enjoin Petitioners from further alleged violations of Sections 2–8 of the Employment Agreement.

26. Six of the claims in the California Action are asserted against IPE Solutions in addition to Dr. Breville. Although IPE Solutions is not a signatory to the Employment Agreement, it has standing to enforce the arbitration clause because Byte Bridge sued IPE Solutions as an alter ego of Dr. Breville. (Cal. Compl. ¶ 5 ("On information and belief, IPE is an alter-ego of Defendant Breville, who owns and controls IPE.")); *see Roe v. Gray*, 165 F. Supp. 2d 1164, 1175 (D. Colo. 2001) (holding that if a non-signatory is sued in its capacity as an alter ego of a signatory to an arbitration agreement, the non-signatory has the right to proceed under the arbitration agreement); *see also GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 590 U.S. 432, 437 (2020) (recognizing that arbitration agreements may be enforced by nonsignatories through

assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel).

27. Even if Byte Bridge disagrees that its claims are required to be submitted to arbitration under the Employment Agreement, disputes about the arbitrability of the claims themselves must be resolved through arbitration. *See* AAA Emp't Rules, R-7(b); *Goldgroup Res., Inc. v. DynaResource de Mexico, S.A. de C.V.*, 994 F.3d 1181, 1191 (10th Cir. 2021) (holding that incorporation of the AAA Rules "constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability issues").

28. After filing this Petition, Petitioners will file a motion to stay pursuant to Section 3 of the FAA in the California Action as to the arbitrable claims, and will attach this Petition as an exhibit. *See* 9 U.S.C. § 3.

## COUNT I
## Compel Arbitration in Colorado under the Federal Arbitration Act

29. Petitioners restate and incorporate by reference the allegations contained in the preceding paragraphs of this petition.

30. The decision of whether to enforce an arbitration agreement involves a two-step inquiry: (1) whether a valid arbitration agreement exists; and (2) whether the arbitration agreement covers the parties' dispute. *Cavolavic v. J.C. Penney Corp., Inc.*, 884 F.3d 1051, 1057 (10th Cir. 2018). "Just as parties can agree to arbitrate the merits of a dispute, they can agree to arbitrate arbitrability, such as the validity and scope of an arbitration provision." *Frazier v. W. Union Co.*, 377 F. Supp. 3d 1248, 1255 (D. Colo. 2019). Ultimately, "[w]hen analyzing whether the parties agreed to submit a specific dispute to arbitration, all doubts are to be resolved in favor of arbitrability." *Id.* (quoting *Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511, 1514 (10th Cir. 1995) (cleaned

up).

31. Here, the Employment Agreement contains a valid and binding agreement to arbitrate. (Emp't Agreement § 12.1 ("In the event that any dispute or controversy arises out of, or relates to this [Employment] Agreement, the dispute or controversy shall be settled by arbitration . . . in accordance with the employment dispute resolution rules then in effect of the American Arbitration Association . . . .").)

32. As set forth above, each of the claims in the California Action asserted against Dr. Breville and IPE Solutions, with the exception of Byte Bridge's claim for injunctive relief under its Sixth Cause of Action, fall within the scope of the arbitration clause in Section 12 of the Employment Agreement.

33. Section 12.1 of the Employment Agreement requires that the arbitration be held in Colorado, because that is both where Dr. Breville is domiciled and where he provided services for Byte Bridge.

34. To the extent any dispute exists as to the validity of the Employment Agreement or its arbitration clause, whether the Arbitrable Claims fall within the scope of Section 12 of the Employment Agreement, or whether Section 12 of the Employment Agreement requires arbitration to remain in Colorado, Byte Bridge and Dr. Breville delegated such disputes to the arbitrator by incorporating the AAA rules. *See* AAA Emp't Rules, R-12(d) (noting the arbitrator's authority to determine the locale of the arbitration).

## PRAYER FOR RELIEF

WHEREFORE, Petitioners respectfully request judgment as follows:

a. An order compelling the arbitration of Respondent's claims against Petitioners before the AAA in Colorado and in the manner provided for in Section 12 of the Employment Agreement, with the exception of Respondent's request for injunctive

relief against Breville in its Sixth Cause of Action;

b. An order enjoining Respondent from pursing its claims against Petitioners in the California Action, with the exception of Respondent's request for injunctive relief against Breville in its Sixth Cause of Action; and

c. Any other relief that the Court deems just and proper.

Date: September 15, 2026

Respectfully submitted,

By: *[/s/ Benjamin S. Morrell]*
Benjamin S. Morrell
TAFT STETTINIUS & HOLLISTER LLP
111 E. Wacker Dr., Ste. 2600
Chicago, IL 60601
Telephone: (312) 527-4000
Facsimile: (312) 527-4011

*Counsel for Petitioners Curtis H. Breville and Breville Enterprises LLC*