United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BYTE BRIDGE, INC.,<br>Plaintiff,<br>v.<br>BREVILLE H. CURTIS, et al.,<br>Defendants. | Case No. 26-cv-08627-WHO<br><br>**ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION AND DENYING MOTION TO STAY**<br><br>Re: Dkt. Nos. 6, 21 |

Byte Bridge, Inc. ("Byte Bridge"), sues its former employee Curtis H. Breville ("Breville") and Breville's new company, C.H. Breville Enterprises LLC d/b/a IPE Solutions ("IPE"), alleging among other things that defendants improperly used its trade secrets in violation of federal and state law after Breville left Byte Bridge and started IPE. Before me are several motions. Byte Bridge moves for a preliminary injunction enjoining defendants from using or disclosing its trade secrets. Defendants move to stay this case pending arbitration pursuant to the arbitration clause in the parties' employment contract. And both parties filed motions to seal. For the reasons outlined below, I GRANT the motion for preliminary injunction and enter a narrowly tailored injunction covering only the trade secret that Byte Bridge has described with sufficient particularity. I DENY the motion to stay and I GRANT the motions to seal.

## BACKGROUND

### I. Factual Background

Byte Bridge is a global IT solutions provider with deep expertise in data centers and workplace solutions. Compl. ¶ 13. From February 3 to December 17, 2025, Breville worked at Byte Bridge and served as its Global Pre-Sales Engineering Manager (Systems and Cooling) before becoming Vice President of Data Center Cooling. *Id.* ¶ 14. At the start of his employment,

United States District Court
Northern District of California

he signed an Employment Agreement under which he agreed to keep "Proprietary Information," including trade secrets, confidential and not to use such information without Byte Bridge's prior written consent. *Id.* ¶ 15, Ex. A ("Employment Agreement"). He also agreed to return all such information that he created or possessed to Byte Bridge upon employment termination.

Breville, Sundeep Raina (Director of Sales at Byte Bridge), and Marvin Cunanan (co-founder of Byte Bridge) jointly developed the Foundational Liquid Cooling Certification ("FLCC") Program and related presentation materials, including a 75-slide presentation ("FLCC Handout") and the FLCC training course. *See id.* ¶ 20; Declaration of Curtis H. Breville ("Breville Decl.") [Dkt. No. 22-3] ¶ 15, Ex. 2; Declaration of Sundeep Raina ("Raina Reply Decl.") [Dkt. No. 29-4] ¶¶ 1, 3–5, Exs. A–B. Raina thought that such a course would be helpful for Byte Bridge's existing customers and could attract new clients. Raina Reply Decl. ¶ 3. Byte Bridge continued developing the FLCC training program with the goal of monetizing it. *Id.* ¶ 5.

Breville disagreed with Byte Bridge's approach of using the training as a sales tool, and Byte Bridge terminated him at the end of 2025. Breville Decl. ¶¶ 35–36. Upon departure, he signed a "Severance Agreement and General Release," which provided that he would not solicit Byte Bridge's clients or employees for twelve months and that he would keep Byte Bridge's trade secrets and "Proprietary Information" confidential. Compl. ¶ 18, Ex. B.

After he left, Breville launched his own company, IPE, in January 2026. Compl. ¶ 22; Breville Decl. ¶¶ 3, 37. IPE is a consulting company that also offers Certified Liquid Cooling Training. Breville Decl. ¶ 37. In January and February 2026, Breville filed trademark applications for "Foundational Liquid Cooling Certification," "Liquid Cooling Certification," and "FLCC." *Id.* ¶ 56; Compl. ¶¶ 24–26.

On February 16, 2026, Breville reached out to Byte Bridge and disclosed the applications, explained his ownership position, and proposed licensing and collaboration. Breville Decl. ¶¶ 51–52, Ex. 9. In June of 2026, counsel for Byte Bridge sent cease-and-desist demand letters to Breville, demanding that he destroy all Byte Bridge "Proprietary Information," withdraw his pending trademark applications with prejudice, and pay Byte Bridge damages and attorneys' fees. Declaration of Chancellor W. Tseng ("Tseng Decl.") [Dkt. No. 6-3] ¶¶ 2–3, Ex. A. In response,

United States District Court
Northern District of California

Breville argued that he had conceived of the FLCC concept while at his previous employer CoolIT Systems, and he asked Byte Bridge to identify its claims with more specificity. *Id.* Ex. A. The parties went back and forth and were unable to come to a resolution. *Id.*

### II. Procedural Background

Byte Bridge initiated this action on August 19, 2026, and filed a motion requesting a temporary restraining order that same day. *See generally* Compl.; Plaintiff Byte Bridge, Inc.'s Ex Parte Motion for Temporary Restraining Order ("Mot. for PI") [Dkt. No. 6-1]. It alleges that defendants misappropriated trade secrets in violation of the Defense of Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 and California Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code § 3426. Compl. ¶¶ 28–45. It also contends that defendants violated the Lanham Act, breached their contracts with Byte Bridge as well as their fiduciary duty and duty of loyalty, conducted unfair and unlawful business practices, and intentionally and/or negligently interfered with contractual and prospective economic relations. *Id.* ¶¶ 46–76. I found that the relief sought in their request for a temporary restraining order was overly broad and more suitable for disposition at the preliminary injunction stage, so I converted the motion into one for preliminary injunction and ordered defendants to preserve relevant evidence. Dkt. No. 14.

On September 15, 2026, defendants filed a petition to compel arbitration with the District Court of Colorado, pursuant to the arbitration clause in the parties' employment agreement. Petition to Compel Arbitration [Dkt. No. 21-1]. The next day, defendants filed a motion to stay this case pending arbitration. Defendants Curtis H. Breville and C.H. Breville Enterprises LLC's Motion to Stay Pending Arbitration ("Mot. to Stay") [Dkt. No. 21]. I heard argument on both motions on October 28, 2026.

## LEGAL STANDARD

### I. Preliminary Injunction

Federal Rule of Civil Procedure 65 governs preliminary injunctions. A preliminary injunction may be issued if a plaintiff establishes: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *See Winter v. Nat. Res. Def.*

*Council, Inc.*, 555 U.S. 7, 20 (2008). "Injunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22. The Ninth Circuit has held that "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *See All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011).

**II. Stay Pending Arbitration**

Under section 3 of the Federal Arbitration Act (FAA), a "federal court must stay its proceedings against a party bound to an arbitration agreement subject to the FAA." *Cisco Sys., Inc. v. Chung*, 462 F. Supp. 3d 1024, 1036 (N.D. Cal. 2020). Distinct from that statutorily mandated stay, "a district court maintains authority to enter a stay of litigation as part of its inherent authority to manage its own docket." *Id.* Where plaintiffs assert both arbitrable and nonarbitrable claims, district courts therefore have discretion whether to proceed with nonarbitrable claims before or after the arbitration. *Pac. States Indus. Inc. v. Am. Zurich Ins. Co.*, No. 18-CV-04064-LHK, 2018 WL 6106383, at *7 (N.D. Cal. Nov. 21, 2018). The United States Supreme Court has recognized that entering a stay may be advisable in such cases involving mixed arbitrable and non-arbitrable claims. *Cisco*, 462 F. Supp. 3d at 1036.

## DISCUSSION

**I. Byte Bridge's Motion for Preliminary Injunction**

Byte Bridge moves for a preliminary injunction to enjoin defendants from using or disseminating its trade secrets. It argues that a preliminary injunction is appropriate because (1) it is likely to succeed on the merits of its claims under CUTSA and the DTSA;[1] (2) it stands to suffer irreparable injury if defendants are allowed to continue using its trade secrets; (3) a preliminary injunction is in the public interest in protecting trade secrets; and (4) the balance of hardships

---

[1] On reply, Byte Bridge argues for the first time that it is likely to succeed on its breach of contract and Lanham Act claims. Reply Memorandum of Points and Authorities in Support of Plaintiff's Motion for Preliminary Injunction ("MPI Reply") [Dkt. No. 30] at 14–16. I will not address these "arguments raised for the first time in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (2007). In any event, Byte Bridge has established likelihood of success on the merits of its trade secret claims, as discussed below.

strongly favors a preliminary injunction because it will only prevent defendants from engaging in conduct that is unlawful. *See* Mot. for PI at 6–10.

Defendants challenge Byte Bridge's motion on a variety of grounds. They argue that Byte Bridge is unlikely to succeed on the merits because it has not identified any protectable trade secret, that there was no misappropriation by Breville or IPE, and that Byte Bridge did not suffer any harm. *See* Opposition to Motion for Preliminary Injunction ("MPI Oppo.") [Dkt. No. 22-2] at 16–23. They further assert that Byte Bridge cannot show irreparable harm, the public interest disfavors a preliminary injunction, and the balance of hardships tips in their favor. *See id.* at 23–29.

**A. Likelihood of Success on the Merits**

To obtain a preliminary injunction, a plaintiff must first identify its alleged trade secrets with "reasonable particularity." *WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834, 845 (N.D. Cal. Nov. 5, 2019). A prima facie case for trade misappropriation under both the DTSA and CUTSA requires a plaintiff to show that (1) it owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff.[2] *Bambu Franchising, LLC v. Nguyen*, 537 F. Supp. 3d 1066, 1073 (N.D. Cal. 2021).

**1. Reasonable Particularity**

"To prove ownership of a trade secret, the plaintiff must identify the trade secrets and carry the burden of showing that they exist." *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 658 (9th Cir. 2020) (internal quotations and citation omitted). The plaintiff should describe the subject matter of the trade secret with "sufficient particularity" to separate it from matters of general knowledge in the trade or of special knowledge of those persons skilled in the trade. *Id.*[3] The plaintiff "may not simply rely upon 'catchall' phrases or identify categories of trade secrets [it] intend[s] to pursue at trial." *Id.* at 658.

---

[2] Damages are discussed in the section on irreparable harm.

[3] California law similarly requires the plaintiff to identify the trade secret with "reasonable particularity" prior to commencing discovery. *Id.* at 658 n.1. "Courts have held that the DTSA and the CUTSA share the same pleading requirements for the identification of trade secrets." *Alta Devices, Inc. v. L.G. Elecs., Inc.*, 343 F. Supp. 3d 868, 880–81 (N.D. Cal. 2018).

In its motion, Byte Bridge states that it "owns the FLCC program, including its name and related program materials"; that its "FLCC program is part of [its] Trade Secrets"; and that defendants are misappropriating the "FLCC program and its underlying confidential files." Mot. for PI at 11, 13. Such broad language is too generic, as it describes a program which potentially qualifies for trade secret protection without explaining why it should be protected. *See ISpot.TV, Inc. v. Teyfukova*, No. 21-CV-06815, 2025 WL 2994724, at *4 (C.D. Cal. Feb. 27, 2025) (finding that plaintiff's description of a confidential program was insufficient where plaintiff did not describe how the program worked or what made it unique). It is unclear which of the "related program materials" or "underlying confidential files" are trade secrets. *See InteliClear*, 978 F.3d at 660 (explaining that a description effectively asserting that all information in or about a software package is a trade secret was insufficient). Moreover, the FLCC program name was plainly disclosed to the public and so cannot be a protectable trade secret. *See Kavanagh v. Tuller*, No. 16-CV-01937, 2017 WL 1496436, at *4 (S.D. Cal. Apr. 26, 2017).

On reply, however, Byte Bridge appears to assert that its FLCC Handout, which defendants attached in their opposition under seal, is its trade secret, as it spends its brief explaining why the FLCC Handout qualifies as one. *See, e.g.*, MPI Reply at 8 ("Therefore, the FLCC Handout is a trade secret under the DTSA and CUTSA."). That identification is sufficiently particular, so I will consider whether the FLCC Handout meets the definition of a trade secret.

**2. Existence of the Trade Secrets**

A trade secret is information that (1) derives independent economic value, actual or potential, from not being generally known to, or readily ascertainable by other people who can obtain economic value from its disclosure or use; and (2) is subject to reasonable efforts to maintain its secrecy. *WeRide*, 379 F. Supp. 3d at 846–47. Defendants argue that the FLCC Handout is not a protectable trade secret because it is made entirely of information that is generally known and publicly available and because Byte Bridge publicly disclosed the FLCC Handout. *See* MPI Oppo. at 17–20.

In support of their argument that the FLCC Handout is comprised of entirely public

knowledge, defendants submit an exhibit comparing "specific information present in exemplars of slides in the FLCC Handout with information that is publicly available on the internet." *Id.* at 19; *see* Breville Decl. ¶¶ 16–20, Ex. 3. As defendants concede, however, a compilation of generally available or publicly known information may be a trade secret when the compilation itself is not generally known or readily ascertainable. *See Experian Info. Sols., Inc. v. Nationwide Mktg. Servs. Inc.*, 893 F.3d 1176, 1188 (9th Cir. 2018). "In order for a compilation of public information to constitute a trade secret, it must be compiled in a novel way." *Calendar Rsch. LLC v. StubHub, Inc.*, No. 17-CV-04062, 2018 WL 4846797, at *9 (C.D. Cal. Aug. 7, 2018).

In his declaration, Raina states that the FLCC training course was created to fill a gap in the data center market for independent certifications of liquid cooling training practices. *See* Raina Reply Decl. ¶ 3. In other words, the FLCC Handout was a first-of-its-kind compilation because the training topics were not specific to a particular original equipment manufacturer. *See id.*; Breville Decl. ¶ 15, Ex. 2. Communications between Breville and Raina further illustrate that the FLCC Handout and training were novel and understood to be an industry first and that the topics were created internally at Byte Bridge. *See* Raina Reply Decl. ¶ 4, Ex. A.

Defendants' contention that no independent economic value was derived from the FLCC Handout lacks merit. *See* MPI Oppo. at 20. Byte Bridge collected training fees from attendees. *See* Declaration of Marvin Cunanan ("Cunanan Reply Decl.") [Dkt. No. 29-3] ¶¶ 5, 7, Ex. F. That others were willing to pay for access to the FLCC Handout serves as evidence of independent economic value. *See HarcoSemco, LLC v. Herber Aircraft Serv. Inc.*, No. 23-CV-02717, 2025 WL 2019221, at *12 (C.D. Cal. May 21, 2025).

On this point, defendants argue that the public disclosure of the FLCC Handout to training attendees prevents the FLCC Handout from qualifying as a trade secret. *See* MPI Oppo. at 19. The mere fact of disclosure does not preclude information from being a trade secret, however. *HarcoSemco*, 2025 WL 2019221, at *13. The relevant inquiry is whether Byte Bridge took reasonable measures to maintain the secrecy of the information. *Id.* Such reasonable measures include imposing confidentiality obligations on the receiving party. *InteliClear*, 978 F.3d at 660–61.

United States District Court
Northern District of California

Here, Breville states that copies of the FLCC Handout were distributed to training attendees, that he did not obtain any confidentiality agreement from any attendee or instruct attendees to keep the presentation confidential, and that attendees were able to keep their copies after the training. Breville Decl. ¶¶ 24, 33–34. Both Cunanan and Raina state, however, that copies were distributed only to participants who agreed to written confidentiality agreements. Raina Reply Decl. ¶ 8; Cunanan Reply Decl. ¶ 4. Potential customers were asked to sign forms with a confidentiality clause indicating that training materials are proprietary to Byte Bridge, while existing customers were under existing confidentiality agreements and were informed that the FLCC Handout was confidential and proprietary. Raina Reply Decl. ¶¶ 9–10; Cunanan Reply Decl. ¶¶ 5–7, Ex. F. The record to date establishes that Byte Bridge took reasonable measures to keep the FLCC Handout confidential – even if Breville was not personally the one sending confidentiality agreements to customers. I find that Byte Bridge is likely to succeed in showing that the FLCC Handout meets the definition of a "trade secret."

**3. Misappropriation**

"Misappropriation" means acquisition of a trade secret through means the party knew or should have known were improper, such as theft or breach of a duty to maintain secrecy. *WeRide*, 379 F. Supp. 3d at 846. A party may be liable for misappropriation if it knows or has reason to know that a trade secret it uses was derived from a person who acquired it through improper means. *Id.* Byte Bridge has shown that it is likely to succeed on the merits of its trade secret misappropriation claims against Breville and IPE.

At a minimum, Breville misappropriated the FLCC Handout through improper acquisition. Mere possession of a trade secret by a departing employee is insufficient to establish misappropriation. *Cutera, Inc. v. Lutronic Aesthetics, Inc.*, 444 F. Supp. 3d 1198, 1207 (E.D. Cal. 2020). But "[a] departing employee's retention of trade-secret information *without permission* amounts to improper acquisition sufficient to allege misappropriation[.]" *Flextronics AP, LLC v. Ricci*, 838 F. Supp. 3d 936, 956 (N.D. Cal. 2026).

Breville admits that he retained a copy of the FLCC Handout. Breville Decl. ¶ 60. Under the Employment Agreement, Breville was required to return all "Proprietary Information" he

possessed upon termination. Employment Agreement § 2.7. "Proprietary Information" includes "trade secrets." *Id.* § 2.2. His retention in violation of the Employment Agreement amounts to improper acquisition.

Byte Bridge has also shown that it is likely to succeed on the merits of its trade secret misappropriation claims against IPE. Byte Bridge argues that because Breville is the Founder and CEO of IPE, IPE necessarily knows or has reason to know that Breville acquired the FLCC Handout through improper means. *See* Mot. for PI at 11–12. In response, defendants point to Byte Bridge's failure to identify any improper acquisition, disclosure, or use by IPE and contend that Byte Bridge's argument only concerns "disputed trademark ownership." MPI Oppo. at 22. However, I find that Byte Bridge has provided strong circumstantial evidence of misappropriation. Breville's active involvement in developing the FLCC Handout and program, his improper retention of the trade secret, and his new company's adoption of the same name for its own program all suggest that, more likely than not, there was trade secret misappropriation on part of IPE. *See, e.g.*, Compl. ¶ 22. It strains credulity that the same name would reappear on a competing program[4] without the trade secret that carries that same name having been put to use. Direct evidence of misappropriation is rare, and at the preliminary injunction stage, Byte Bridge "need only show a likelihood of success on its claim, not unassailable proof." *Bambu Franchising*, 537 F. Supp. 3d at 1075.

**B. Irreparable Harm**

Byte Bridge has shown that it is likely to suffer irreparable harm from defendants' misappropriation of its trade secret. Evidence of threatened loss of prospective customers supports a finding of possibility of irreparable harm. *Id.* at 1078. Moreover, "[w]here a party can show a strong chance of success on the merits, he need only show a possibility of irreparable harm." *Indep. Techs., LLC v. Otodata Wireless Network, Inc.*, 836 F. App'x 531, 533 (9th Cir. 2020). Here, the evidence is of actual loss: Cunanan identifies an existing Byte Bridge customer who

[4] While defendants assert that they do not "compete for Byte Bridge's reselling and integration business," MPI Oppo. at 11, they do not disclaim that IPE's FLCC program competes with Byte Bridge's FLCC program. *See* Cunanan Reply Decl. ¶ 8.

took IPE's FLCC training course. Cunanan Reply Decl. ¶ 8; Declaration of Marvin Cunanan ("Cunanan Decl.") [Dkt. No. 6-2] ¶ 9, Ex. E. Breville declares that he has not solicited any Byte Bridge client, customer, or employee since he left. Breville Decl. ¶ 43. But even if he has not personally solicited Byte Bridge clients, the possibility remains that defendants' misappropriation results in IPE being able to win customers away from Byte Bridge.

Defendants contend that Byte Bridge's delay in seeking a preliminary injunction undercuts the allegations of irreparable harm. MPI Oppo. at 23–24. However, "[a] portion of the delay resulted from reasonable pre-litigation communication." *Desirous Parties Unlimited, Inc. v. Right Connection, Inc.*, No. 22-16530, 2023 WL 4285504, at *1 (9th Cir. June 30, 2023). And Byte Bridge only learned of actual loss of existing customers in August 2026. It initiated this action that same month. I find that absent an injunction, Byte Bridge will suffer irreparable harm.

**C. Balance of the Equities**

The balance of equities also tips in Byte Bridge's favor. An injunction will prevent defendants from using any misappropriated information, and it is "no burden for them to do what the law already requires." *WeRide*, 379 F. Supp. 3d at 854. Defendants argue that the proposed injunction is overly broad, as any trade secrets beyond the FLCC Handout were not described with sufficient particularity and because it seeks wide-ranging expedited discovery. I can address these concerns by narrowly tailoring the injunctive relief to be granted. "When deciding whether to issue a narrowly tailored injunction, district courts must assess the harms pertaining to injunctive relief in the context of that narrow injunction." *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1022 (9th Cir. 2009).

**D. Public Interest**

"The public interest is served by protecting trade secrets." *Bambu Franchising*, 537 F. Supp. 3d at 1080. Defendants note that California has a strong policy in favor of competition, but that interest yields to California's interest in protecting trade secrets. *Id.* Defendants further argue that the public interest factor does not weigh in Byte Bridge's favor because Byte Bridge has not shown likelihood of success on its claims, but as discussed above, I find that it has. On balance, the public interest factor favors entry of injunctive relief, though, as discussed above, a few of

United States District Court
Northern District of California

Byte Bridge's injunctive measures are too wide-ranging and will be tailored.

**E. Entitlement to Preliminary Injunctive Relief and Scope of Injunction**

Based on the record, I conclude that Byte Bridge is entitled to preliminary injunctive relief.[5] The scope of the injunction is the question. District courts have broad latitude in fashioning equitable relief when necessary to remedy an established wrong. *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1024 (9th Cir. 2016) (internal quotations omitted). Equitable relief may "be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (internal quotations omitted).

In the first provision of its proposed injunction, Byte Bridge seeks to enjoin defendants from obtaining, retaining, using, or disclosing information or documents "related to confidential aspects of files that Defendant Breville . . . obtained from Plaintiff's systems" prior to his resignation, "including any information contained within or deriving from those files, and the [FLCC] training program and its related materials and files." Proposed Order [Dkt. No. 6-5] ¶ 1. This language is too vague and goes beyond the trade secret that was particularly identified: the FLCC handout. I will limit this provision to encompass only the information identified herein as protected trade secrets.

The second provision is similarly overbroad as it would restrain defendants from contacting or communicating with any current or prospective clients identified in the "Misappropriated Proprietary Information," defined as the FLCC program "and its related materials and files." *Id.* ¶ 2. Byte Bridge has not sufficiently identified which "materials and files" may contain client information, let alone the proprietary and valuable nature of that information.

Byte Bridge then seeks an order requiring preservation of evidence related to this action

[5] Without considering whether any claims are arbitrable, I note that I "may issue interim injunctive relief on arbitrable claims if interim relief is necessary to preserve the status quo and the meaningfulness of the arbitration process—provided, of course, that the requirements for granting injunctive relief are otherwise satisfied." *Toyo Tire Holdings Of Americas Inc. v. Cont'l Tire N. Am., Inc.*, 609 F.3d 975, 981 (9th Cir. 2010).

and the Misappropriated Proprietary Information. *Id.* ¶ 3. This is a reasonable request, given that litigants are generally obligated to maintain and preserve all documents, data, and tangible things that may be related to the litigation. *Henry Schein, Inc. v. Cook*, 191 F. Supp. 3d 1072, 1078 (N.D. Cal. 2016). I will grant this provision.

The fourth provision would require defendants to return any and all "Misappropriated Proprietary Information" in its possession, custody, or control, whether original or duplicate. Proposed Order ¶ 4. For the same reasons discussed above, I will limit this to the FLCC Handout, which Breville has indicated he is willing to return. Breville Decl. ¶ 60.

Finally, as defendants point out, the remaining provisions in the requested relief are akin to a request for expedited discovery. *See* Proposed Order ¶¶ 5–8. On reply, Byte Bridge does not provide any justification for these provisions, which would intrude into defendants' devices, systems, and accounts. Given that defendants will already be obligated to avoid altering, damaging, or destroying any evidence that is related to this litigation, Byte Bridge has not demonstrated that the balance of hardships would tip in its favor with respect to these provisions. Nor has it demonstrated good cause for early discovery. *See Henry Schein*, 191 F. Supp. 3d at 1078–79. I will not include these provisions.

**F. Propriety of a Bond**

A district court retains discretion "as to the amount of security required, *if any*" that is proper to pay the costs of a party that is wrongfully enjoined. *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (internal quotation marks and citations omitted). Byte Bridge argues that no bond is needed because its requested injunctive relief simply prohibits defendants from misappropriating its trade secrets and requires that they keep its trade secrets and proprietary information confidential. Defendants have not presented any "tangible costs" or evidence that would allow me to evaluate the harm they would suffer from an injunction. *Moroccanoil, Inc. v. Zotos Int'l, Inc.*, 230 F. Supp. 3d 1161, 1179 (C.D. Cal. 2017). In my discretion, I will not require a bond.

**II. Breville's Motion to Stay**

Breville moves to stay this case, with the exception of Byte Bridge's claim for injunctive

relief asserted in its sixth cause of action, pending completion of arbitration. Mot. to Stay at 2. Section 12.1 of the Employment Agreement contains an arbitration clause that states:

> In the event that any dispute or controversy arises out of, or relates to this Agreement, the dispute or controversy shall be settled by arbitration, to be held where Employee is domiciled and/or is providing services for Byte Bridge in accordance with the employment dispute resolution rules then in effect of the American Arbitration Association by a single arbitrator. The arbitrator may grant injunctions or other relief in such dispute or controversy. The decision of the arbitrator shall be final, conclusive, and binding on the parties to the arbitration. Judgment may be entered on the arbitrator's decision in any court having jurisdiction. Judgment may include the award of costs and fees. Employee understands that each party's consent to resolve disputes by arbitration, as opposed to the judicial system is consideration for the other party's promise. Employee further understands that he or she has been offered employment by [] Byte Bridge in consideration of Employee's promises to arbitrate disputes.

Employment Agreement § 12.1. The Employment Agreement also provides that Byte Bridge may pursue equitable remedies in court:

> Employee specifically acknowledges that a violation of Section 2, 3, 4, 5, and statements 6, 7, or 8 of this Agreement could cause irreparable injury to [] Byte Bridge and its business or property. Employee, therefore, agrees that in the event of his or her breach of any o the terms and conditions of Section 2, 3, 4, 5, and statements 6, 7, or 8 of this Agreement, Byte Bridge shall be entitled, if it so elects, to institute and prosecute proceedings in any court of competent jurisdiction in equity to enjoin him or her from further violation of such provisions. The remedies provided herein shall be cumulative and in addition to any and all other remedies which either party may have at law or in equity. Remedies at law to be sought in accordance with Section 11 and 12 below.

*Id.* § 10. Breville has since filed a Petition to Compel Arbitration in Colorado of all of Byte Bridge's claims except the claim for injunctive relief asserted in the breach of contract claim. Petition to Compel Arbitration.

In opposition, Byte Bridge does not dispute the validity of the arbitration clause but asks that I find that its injunctive relief claims are excluded from arbitration and any stay. *See* Dkt. No. 31. Breville argues that I do not have the power to make that threshold finding. *See* Dkt. No. 34. I agree with Breville.

The Ninth Circuit has interpreted incorporation of the AAA Rules in an arbitration clause to constitute "clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."

*Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). The arbitration clause here does just that by providing for arbitration "in accordance with the employment dispute resolution rules then in effect of the American Arbitration Association." Employment Agreement § 12.1. The issue of whether Byte Bridge's injunctive relief claims are subject to arbitration is an issue of arbitrability, even if section 10 contains a carveout for injunctive relief. *See Hart v. Charter Commc'ns, Inc.*, No. 17-CV-00556, 2017 WL 6942425, at *8 n.4 (C.D. Cal. Nov. 8, 2017), *aff'd*, 814 F. App'x 211 (9th Cir. 2020). This is because "when a tribunal decides that a claim falls within the scope of a carve-out provision, it necessarily decides arbitrability." *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1076 (9th Cir. 2013). I am therefore unable to decide issues of arbitrability relating to the injunctive relief claims.

Regarding whether to stay the case, I note that as of the date of this Order, the motion to compel arbitration is still pending. *See Breville v. Byte Bridge, Inc.*, No. 26-CV-04497 (D. Colo. filed Sep. 15, 2026). At this point, I will decide whether to stay the case pending resolution of that motion, not pending completion of the arbitration, since no court has compelled arbitration yet. *See Lee v. Postmates Inc.*, No. 18-CV-03421-JCS, 2018 WL 6605659, at *8 (N.D. Cal. Dec. 17, 2018) (stating that the FAA mandates a stay *if a motion to compel arbitration is granted*); *Maharaj v. Charter Commc'ns, Inc.*, No. 20-CV-00064, 2021 WL 1428489, at *5 (S.D. Cal. Apr. 15, 2021) (noting that no rule requires the automatic stay of discovery while a motion to compel arbitration is pending).

I decline to stay the litigation at this point. Even if the District Court of Colorado ultimately compels arbitration, initial disclosures and early discovery conferences will still be useful in arbitration proceedings. There is "no basis to put this case at a standstill in its entirety." *In re Meta AI Glasses Litig.*, No. 26-CV-01897-EMC, 2026 WL 2876321, at *1 (N.D. Cal. Sept. 24, 2026).

## III. Motions to Seal

The parties have filed two motions to seal. Dkt. Nos. 22, 29. Under Ninth Circuit law a party must demonstrate "compelling reasons" to seal any motion-related filings where "the motion at issue is more than tangentially related to the underlying cause of action." *Ctr. for Auto Safety v.*

*Chrysler Grp.*, 809 F.3d 1092, 1096–99 (9th Cir. 2016).

Defendants seek to seal the FLCC Handout in its entirety because Byte Bridge contends that the information in the FLCC Handout is confidential and that the FLCC Handout is its trade secret. Dkt. No. 22. Preventing the release of a trade secret is generally a compelling reason to seal such documents. *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006). Defendants also seek to redact portions of their opposition brief and supporting declaration and exhibits that reference or discuss information from the FLCC Handout. Defendants' request is narrowly tailored, and sealing is appropriate here.

Byte Bridge seeks to seal parts of its reply declarations that identify clients or describe confidential business arrangements, ideas, trade secrets, and strategies. Dkt. No. 29. Its redactions are also narrowly tailored, and it has identified "compelling reasons" to seal the information at issue. Specifically, the client identities and business information are sealable because their disclosure could undercut Byte Bridge's competitive advantage. *See Apex.AI, Inc. v. Langmead*, No. 23-CV-02230-BLF, 2023 WL 4157629, at 2 (N.D. Cal. June 23, 2023). Therefore, both motions to seal are GRANTED.

**CONCLUSION**

For the foregoing reasons, I order as follows:

1. I GRANT Byte Bridge's motion for preliminary injunction.
    a. Defendants Breville and IPE, and all persons or entities acting under, in concert with, or for any one of them, or anyone who receives actual notice of this order, are hereby RESTRAINED and ENJOINED from:
        i. obtaining, retaining, using, transmitting, disseminating, or disclosing any information, data, files simulations, or documents comprising, using, incorporating all or any part of, or deriving from any version of the FLCC Handout; and
        ii. destroying prior to an adjudication or other resolution of this action all emails, files, records, or other documents relating to this action and the FLCC training program and its related materials and files (including, but

not limited to, all electronic communications and all Byte Bridge's trade secrets and confidential and proprietary information) and destroying or modifying such evidence.

b. Defendants are further REQUIRED to:

i. retain and preserve all emails, files, records, or other documents relating to this action and the FLCC training program and its related materials and files (including, but not limited to, all electronic communications and all Byte Bridge's trade secrets and confidential and proprietary information); and

ii. return to Byte Bridge, within three (3) days of this Order, any and all versions or copies of the FLCC Handout that remains in defendants' possession, custody, or control, including any emails, files, records, or other documents that defendants downloaded, removed, or otherwise obtained from Byte Bridge, whether original or duplicate.

c. Byte Bridge is not required to post a bond for the issuance of this preliminary injunction.

d. This preliminary injunction shall remain in full force and effect through the date on which judgment is entered following the trial of this action. This preliminary injunction shall become immediately effective upon its entry.

2. I DENY defendants' motion to stay the litigation pending a ruling on defendants' motion to compel arbitration.

3. I GRANT defendants' motion to seal (Dkt. No. 22) and Byte Bridge's motion to seal (Dkt. No. 29).

**IT IS SO ORDERED.**

Dated: November 6, 2026

William H. Orrick
United States District Judge